UNITED STATES of America ex rel.
James SPRINGLE, Petitioner,

v.

Harold W. FOLLETTE, Warden, Green Haven Prison, Stormville, New York, Respondent.

No. 69 Civ. 3620.

United States District Court
S. D. New York.

Jan. 12, 1970.

James Springle, pro se.

Louis J. Lefkowitz, Atty. Gen. State of New York, New York City, for respondent; Robert S. Hammer, New York City, of counsel.

## OPINION

COOPER, District Judge.

Petitioner, applying *pro se* for a writ of habeas corpus, is presently confined in Green Haven Prison, Stormville, New York, serving a sentence of 6 to 12 years imposed on April 28, 1967 by Judge Orenstein of the Onandaga County Court following petitioner's conviction by a jury of burglary third degree and petit larceny. The conviction was unanimously affirmed without opinion by the Appellate Division, New York Supreme Court, 30 A.D.2d 1051, 295 N.Y.S.2d 323 (4th Dept. 1968). Leave to appeal to the New York Court of Appeals was denied on April 12, 1969. Petitioner's present grievance is based on his claim of identification following an impermissibly suggestive lineup.

The State's evidence at trial developed that on January 22, 1967 at 3:20 p. m. a Mrs. Burke, while visiting (in the same building where she resided) a neighbor's first floor apartment which looks upon the rear of the Snowdon apartment building, observed three men enter the courtyard between the buildings. (Tr. 14)[1] She saw one of the three put his arm against a door leading to the Snowdon basement and appear to force it open (Tr. 13); two of the men went down into the basement while the third remained outside. (Tr. 15). Upon seeing this she called the police. (Tr. 15).

The police arrived according to Mrs. Burke "a couple of minutes" after she called. (Tr. 15). The three police officers who came in answer to the call testified that they found one man Ball outside in the courtyard and two men, petitioner and one Moore, each holding suitcases in their arms, in the storage area of the basement of the Snowdon building. (Tr. 37, 50, 60 et seq.).

The manager of the Snowdon building testified that the door leading to the basement was locked when he inspected it the morning of January 22nd; that he arrived at the scene that afternoon shortly after the police arrested petitioner and the other two men and observed that the lock on the basement door had been broken; that the door into the storeroom was still padlocked, but the bolts had been removed from one side and the door removed from its hinges; that the suitcases petitioner and the other man had under their arms when the police arrived had come from inside the storeroom. (Tr. 21–27).

Mrs. Burke testified that about half an hour after the three men were arrested she accompanied police to the Public Safety Building where she identified petitioner, Moore and Ball as the same three men she had seen when she made her report to the police (Tr. 16–17). On cross-examination, Mrs. Burke stated that her identification of petitioner was made at a show up consisting of only the three suspects and that the police had told her that these were the three men.[2] (Tr. 18).

---

1. "Tr." followed by a number refers to pages in the trial transcript.

2. "Q [defense counsel] And for the purpose of identification, what did you do? Did they put you in some room?
A [Mrs. Burke] Yes, they did.
Q All right were there any in the so-called lineup besides these three Defendants?
A No, Sir.
Q And did the police tell you that these were the three men?
A Yes, they did.
Q And you said, "Yes, they are"?
A Yes.
Q You agreed with them?
A Yes, Sir."
(Tr. 18).

Petitioner, the sole witness for the defense, took the stand and, claiming he was an unknowing participant in the crime, admitted his presence at the scene at the time of arrest, but contested Mrs. Burke's identification of him as one of the three men she first observed entering the Snowdon building. He testified that on the date in question he and Moore while at a restaurant had met for the first time one Lee, whose last name he did not know, and that Lee had offered them a couple of dollars to help him move (Tr. 68); further, that both agreed, but petitioner indicated he had to go to the bathroom and so was given directions to the Snowdon building basement.

Petitioner said that he did not leave the restaurant until about 20 minutes after the other two had left.[3] (Tr. 79). He stated that when he arrived at the rear door of the apartment he found the door open, walked in and joined Lee and Moore in the storage area without noticing the broken condition of the doors. (Tr. 70–71). Lee allegedly gave them directions as to what suitcases to move and left to get a cab. (Tr. 71). Shortly thereafter the police arrived. (Tr. 73). *Petitioner acknowledged being acquainted with Ball* (whom the police found standing outside), but insisted that Ball had not been with them in the restaurant and had not accompanied him to the Snowdon Apartments.

The jury after deliberation for an hour and a half requested that Mrs. Burke's testimony be read to them. (Tr. 123). This request was granted. (Tr. 124). The jury retired and within minutes returned with a verdict of guilty. (Tr. 124).

Petitioner claims that the show up conducted by the police at which Mrs. Burke identified petitioner as one of the three men she saw entering the courtyard was so impermissibly suggestive as to lead to irreparable misidentification on her part.

### Exhaustion of State Remedies

The first question confronting us is whether petitioner has exhausted his available state remedies with respect to this constitutional claim.[4]

On appeal, petitioner's brief raised two issues; the only one relevant to this claim asserts that the verdict was against the weight of the evidence. Brief for Appellant, People v. Springle, Supreme Court, Appellate Division, 4th Dept. At first blush, this does not appear to raise petitioner's present contention of a lineup so impermissibly suggestive as to be a denial of due process and a fair trial. However, the major portion of this section of petitioner's brief was addressed to the credibility of *Mrs. Burke and of her identification of* petitioner as one of three men she observed entering the basement of an apartment building across from where she lived. In this regard petitioner argued:

"While the Supreme Court of the United States has determined that the right to counsel at lineup proceedings

---

3. This is in direct conflict with Mrs. Burke's testimony that the police arrived only "a couple of minutes" after her call.

4. As to the question of waiver or deliberate bypass by petitioner, no objection was taken at trial to Mrs. Burke's stationhouse identification of petitioner. New York nevertheless permits constitutional claims to be raised for the first time on appeal. See United States ex rel. Vanderhorst v. LaVallee, 417 F.2d 411 (2d Cir. October 10, 1969). Petitioner raised this claim on direct appeal. See discussion of exhaustion of state remedies, *infra*. The judgment of conviction having been affirmed without opinion we cannot be certain whether or not petitioner's claim was considered and disposed of on the merits. 30 A.D.2d 1051, 295 N.Y.S. 2d 323 (4th Dept.1968). In any event, the State does not contend that by failing to object at trial petitioner either waived his right to raise this issue or deliberately bypassed state procedures so as to foreclose federal habeas corpus consideration of his claim. Cf. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965).

shall not be applied retroactively and, therefore, that ruling does not have strict application here, the evil which that ruling was intended to obviate can form the basis for a constitutional objection. U. S. v. Wade, 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149]. In the instant case, the procedure was so admittedly suggestive and possible of error that its lack of credibility takes on constitutional dimensions. Palmer v. Peyton [4 Cir.], 359 F.2d 191 [199]."

▪ Thus, although not specifically delineated in his brief as a constitutional claim apart from the state law question of burden of proof, we cannot find that the claimed unconstitutionality of the identification procedure was not fairly presented to and considered by the State courts on his direct appeal. Contrast, e. g., United States ex rel. Santiago v. Follette, 298 F.Supp. 973, 974–975 (S.D. N.Y.1969); United States ex rel. Alberti v. Follette, 269 F.Supp. 7, 9 (S.D.N.Y. 1967). Accordingly, we hold that petitioner has adequately exhausted his available state remedies and is entitled to a determination of his petition for federal habeas corpus relief.

### Suggestive Confrontation

▪ The crime for which petitioner was convicted and the challenged identification occurred prior to the decisions of the Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Thus, the relevant inquiry, as set out by our Court of Appeals, in all such cases arising before Wade is as follows: "was the lineup or showup, without notice to or the presence of counsel, 'on the totality of the circumstances surrounding' the confrontation 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification'?" United States ex rel. Rutherford v. Deegan, 406 F.2d 217, 219 (2d Cir. 1969). See

Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966).

▪ Certainly the manner in which petitioner was identified by Mrs. Burke was highly suggestive and improper; this can be seen from her responses to the questions asked her on cross-examination.[5] She was told by police at the show up that these were the three men. (Tr. 18). Admitting the suggestive character of the confrontation—an approach we most certainly denounce—the issue remains whether on the totality of circumstances surrounding it there is here a very substantial likelihood of irreparable misidentification. We believe not.

Particularly elucidating on the question of the likelihood that the police suggestion was prompted and accepted by Mrs. Burke is her own trial testimony. She was a witness who knew her own mind and insisted on preciseness as to what she could actually see from the window:

"[Prosecutor]: And on that day were you able to look from a window in your neighbor's apartment and see the doorway of the Snowdon Apartments?

[Mrs. Burke]: Yes, I was.

[Prosecutor]: And on this day in question * * *

[Mrs. Burke]: Pardon me. I can't see the doorway. No I could not see the doorway. (Tr. 12–13)

*    *    *    *    *    *

[Mrs. Burke]: I seen him go down, and it looked to me like he went down a little step.

[Prosecutor]: Some steps leading to the rear door?

[Mrs. Burke]: It must be. I don't know for sure.

[Prosecutor]: You know where the rear door is?

---

5. See note 2, *supra.*

584

[Mrs. Burke]: Yes, I do.

[Prosecutor]: Was it in that location?

[Mrs. Burke]: Yes. (Tr. 14–15)

\* \* \* \* \* \*

[Defense counsel]: Now you say you saw someone put their shoulder against the door?

[Mrs. Burke]: He put it against something. Whether it was a door or not, I don't know.

[Defense counsel]: You couldn't see the door?

[Mrs. Burke]: No, Sir." (Tr. 17–18).

This same insistence on precision was reflected in her testimony regarding her identification of the three men. She volunteered that she did not see their faces clearly and "identified them mostly on account of their clothes." (Tr. 18–19). Consistent with this explanation, she stated that she could not recognize petitioner's face at trial and acknowledged that she could no longer identify him, but remembered that her stationhouse identification was positive and certain. (Tr. 17–20). At the conclusion of her testimony, petitioner's trial counsel stated, "I think Mrs. Burke is being very fair." (Tr. 20).

Mrs. Burke was positive of her identification made a half hour after the event took place, but she carefully based it only on what she actually observed take place in the courtyard at three o'clock in the afternoon from her vantagepoint at the first floor apartment window. She refused to be "led on" by the police suggestion. She restricted herself to an identification based primarily on the clothes the three men were wearing.

On the totality of the circumstances surrounding this identification we have no hesitancy in declaring that there was no substantial likelihood of misidentification of petitioner by Mrs. Burke.

Accordingly, petitioner's application for a writ of habeas corpus is denied.

So ordered.