**UNITED STATES of America ex rel. James SPRINGLE, Relator-Appellant,**

v.

**Harold M. FOLLETTE, Warden, Greenhaven Prison, Stormville, N. Y., Respondent-Appellee.**

**No. 143, Docket 34687.**

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1970.

Decided Dec. 22, 1970.

Arnold S. Anderson, New York City, for relator-appellant.

Robert S. Hammer, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel H. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before MOORE, FRIENDLY and ADAMS,* Circuit Judges.

* Of the Third Circuit, sitting by designation.

MOORE, Circuit Judge:

This is an appeal from a denial of a writ of habeas corpus. Defendant was indicted on March 27, 1967 in Onondaga County Court on charges of third degree burglary and petty larceny. Following a jury trial, defendant was convicted and sentenced to six to twelve years as a second felony offender on April 28, 1967. Defendant appealed his conviction to the Supreme Court, Appellate Division (Fourth Department), and on October 24, 1968 the conviction was affirmed. 30 A.D.2d 1051, 295 N.Y.S.2d 323. Leave to appeal to the New York Court of Appeals was denied on April 12, 1969 by Judge Bergan.

The crime for which appellant was convicted occurred on January 22, 1967. Mrs. Martha Burke saw three men enter the courtyard between the apartment building where she was staying and another apartment building adjacent to it. The three broke into the other apartment building via a basement door. Mrs. Burke called the police and reported the crime. The police arrived and found defendant and another individual in the basement and a third man in the courtyard. Defendant and the other man who was found in the building were holding suitcases which contained stolen bedspreads.

The men were arrested; about a half hour later Mrs. Burke was asked to come to the police station for the purpose of making a statement as to what she saw and identifying the men who had been arrested. She stated that she was shown the three men and told that "these were the three men" (Tr. 18). Mrs. Burke then verified that these were in fact the men she had just seen from her vantage point. She was able to do this "mostly on account of their clothes," (Tr. 19) which she recognized

as the clothes worn by the men she had seen previously. At the trial, she stated that she was "positive" that the men she identified at the police station were the men whom she had seen breaking into the apartment basement (Tr. 17). However, she was not able to identify them at the time of trial (Tr. 18).

 Both the original identification and the trial occurred prior to the Supreme Court's decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). As such, *Stovall* teaches that the less rigid pre-*Wade-Gilbert* standard applies. The relevant inquiry is whether, considering the totality of the circumstances, the identification was so "unnecessarily suggestive" and "conducive to irreparable mistaken identification" as to amount to a denial of due process. Stovall v. Denno, *supra*, 388 U.S. at 301, 302, 87 S.Ct. 1967. This is a mere application of the general due process standard: if evidence is admitted which is of little probative value but which is highly prejudicial to a defendant, there is a denial of due process of law, and he is entitled to a new trial. See Kapatos v. United States, 432 F.2d 110 (2d Cir. 1970).

 Since this standard requires a consideration of all the circumstances, it is clear that it includes no *per se* prohibition against one man show-ups. Biggers v. Tennessee, 390 U.S. 404, 408, 88 S.Ct. 976, 19 L.Ed.2d 1267 (1968) (Douglas, J., dissenting); Stovall v. Denno, *supra*. We think that three circumstances in this case indicate that the evidence relating to the identification in the police station was not so unreliable as to constitute a denial of due process of law.[1]

---

1. Since a determination of whether there is a due process violation in identification cases turns on the particular facts in each situation and since the trial judge is in the best position to review the

factual circumstances, "appellate resolution marks the rare exception". Clemons v. United States, 133 U.S.App.D.C. 27, 49, 408 F.2d 1230, 1252 (1968) (*en banc*) (Opinion of Leventhal, J., joined

The first factor is the immediacy of the identification. Apparently, even in a post *Wade-Gilbert* situation, full compliance with the standards set forth in those cases may be unnecessary where a prompt on-the-scene identification is involved. Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, 1285 (D.C.Cir.1968) (Bazelon, Chief Judge), cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969). Here, although the identification was not on-the-scene, it was immediate. This fact of immediacy makes it much more likely that the witness will have a fresh recollection of the appearance of the suspect and hence that the identification will be accurate. Immediacy is also important in aiding a speedy police investigation. See United States ex rel. Stovall v. Denno, 355 F.2d 731, 735 (2d Cir.1966), aff'd sub nom. Stovall v. Denno, *supra*. Thus, as was said by Judge (now Chief Justice) Burger in Bates v. United States, 132 U.S.App.D.C. 36, 38, 405 F.2d 1104, 1106 (1968):

> "There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup', when this occurs near the time of the alleged criminal act."

by Judge [now Chief Justice] Burger), cert. denied, 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969). This is especially true in habeas corpus proceedings. United States ex rel. Phipps v. Follette, 428 F.2d 912, 916 (2d Cir. 1970).

2. The opinion of the District Court contains the following portion of the transcript which illustrates the conduct of Mrs. Burke in her direct testimony:
"[Prosecutor]: And on that day were you able to look from a window in your neighbor's apartment and see the doorway of the Snowden apartments?
[Mrs. Burke]: Yes. I was.
[Prosecutor]: And on this day in question * * *
[Mrs. Burke]: Pardon me, I can't see the doorway. No I could not see the doorway. (Tr. 12–13)
 * * * * *
[Mrs. Burke]: I seen him [sic] go down, and it looked to me like he was down a little step.

Accord, United States ex rel. Anderson v. Mancusi, 413 F.2d 1012 (2d Cir. 1969); United States ex rel. Williams v. LaVallee, 415 F.2d 643, 645 (2d Cir. 1969), cert. denied, 397 U.S. 997, 90 S.Ct. 1139, 25 L.Ed.2d 406 (1970); United States ex rel. Phipps v. Follette, 428 F. 2d 912, 915 (2d Cir. 1970); cf. United States v. Wade, *supra*, 388 U.S. at 241 and n. 33, 87 S.Ct. 1926.

Furthermore, as the District Court indicated, Mrs. Burke refused to let herself be led to any conclusions by the suggestions of the government. She stated at trial that she did not then recognize the men, and admitted that even at the original show-up, she recognized only their clothes and not their faces. Similarly, in her testimony, she insisted on being quite precise and was very careful to limit the scope of her factual assertions.[2] She was not the victim of the crime, and that may have been helpful in enabling her to be so dispassionate in reporting the events she witnessed. Even the defense counsel conceded that "Mrs. Burke [was] very fair" (Tr. 20). The fairness shown by Mrs. Burke and her refusal to be influenced by government suggestion further indicates the reliability of the identification, and is a second factor suggesting there was no due process denial.

[Prosecutor]: Some steps leading to the rear door?
[Mrs. Burke]: It must be. I don't know for sure.
[Prosecutor]: You know where the rear door is?
[Mrs. Burke]: Yes, I do.
[Prosecutor]: Was it in that location?
[Mrs. Burke]: Yes. (Tr. 14–15)."
Then also the following portion was quoted from the cross examination of Mrs. Burke:
"[Defense Counsel]: Now you say you saw someone put their shoulder against the door?
[Mrs. Burke]: He put it against something. Whether it was a door or not, I don't know.
[Defense Counsel]: You couldn't see the door?
[Mrs. Burke]: No, Sir. (Tr. 17–18)."
See United States ex rel. Springle v. Follette, 308 F.Supp. 580, 583, 584 (S.D. N.Y.1970).

■ On the basis of these two factors alone, the identification process may be considered sufficiently reliable regardless of the other evidence involved in the case. Even if that were doubted, however, the task of determining whether due process is violated is not limited to an assessment of the circumstances surrounding the identification process, but extends to the "totality of the circumstances." Stovall v. Denno, *supra;* Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). An examination of the totality of the circumstances necessarily means that the entire trial must be scrutinized to see whether on balance the petitioner received a fair hearing. Clemons v. United States, *supra*, 408 F.2d at 1250 (Opinion of Judge Leventhal joined by Judge [now Chief Justice] Burger).[3] Here, the fact that defendant and his accomplices were caught at the scene of the crime in possession of the stolen goods indicates that "these were the three men" (Tr. 18), and thus provides an additional indication that the circumstances were not "conducive to irreparable *mistaken* identification" (emphasis added), Stovall v. Denno, *supra*, 388 U.S. at 302, 87 S.Ct. 1967) notwithstanding

defendant's assertion that he was not involved in the crime.[4]

■ We, therefore, conclude that considering either the totality of circumstances of the identification or the totality of circumstances of the trial as a whole, defendant received a fair trial and was not denied his rights under the due process clause.

■ In his brief on appeal, the petitioner alleges that the prosecutor's summation was unnecessarily inflammatory. Since this point was not raised in the petition for the writ of habeas corpus, it is not properly before us. Even if it had been raised in the petition, we would decline to consider the contention on grounds of lack of exhaustion of State remedies, the contention not having been adequately raised in the appeal in the state courts.

The judgment of the District Court is affirmed and the petition for writ of habeas corpus is dismissed.

FRIENDLY, Circuit Judge (concurring):

Making the "two-pronged" inquiry which we have held to be mandated by Stovall v. Denno, 388 U.S. 293, 301–302,

---

3. In the Leventhal-Burger opinion in *Clemons*, it was stated:
 "I further think it appropriate—particularly in cases where the trial as well as the identification preceded *Wade, Gilbert* and *Stovall*—that the court assess not only the 'totality of circumstances' surrounding the challenged identification, but also the totality of circumstances at trial concerning the issue of identification, i. e. the totality of proof and other factors bearing on the likelihood of misidentification. The mere fact that some 'unreliable' identification testimony was received does not establish a denial of the due process right to a fair trial."

4. Usually, the proper application of *Stovall* obviates the necessity for applying the harmless error rule since the same factors which would be considered in applying that doctrine are, under the "totality of the circumstances" approach considered in determining whether at

trial there was a denial of due process. Although the denial of due process is a constitutional defect, if there is harmless error, there would be no due process denial and no constitutional defect. Thus, if one were to apply a harmless error rule in the due process context, it would not be the "harmless [error] beyond a reasonable doubt" test of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), but rather the more liberal non constitutional standard of Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L. Ed. 1557 (1946). See Clemons v. United States, *supra*, 408 F.2d at 1253, 1255 (Wright, J.). As Judge Wright indicated, the *Kotteakos* standard is that harmless error exists where it is not "reasonably probable that the jury was swayed by the invalid testimony." See also United States ex rel. Phipps v. Follette, *supra*, 428 F.2d at 916–917.

87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) and Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), see United States ex rel. Phipps v. Follette, 428 F.2d 912, 914–915 (1970), I am bound to say that the station-house identification was "unnecessarily" [*Stovall*] or "impermissibly" [*Simmons*] suggestive. This was no "one-man show-up," which I agree is often allowable. Having seen three black men break and enter the apartment building, Mrs. Burke was shown three blacks and was told by the police "these were the three men." Apart from that strong suggestion, the exhibition of the three together, rather than separately, improperly enhanced the likelihood that although in fact she could only recall one or two, she would identify all three. Cf. United States ex rel. Phipps v. Follette, *supra*, 428 F.2d at 913–914.

However, I agree that under the circumstances here, the procedure did not "give rise to a very substantial likelihood of irreparable misidentification," Simmons v. United States, *supra*, 390 U.S. at 384, 88 S.Ct. at 971. Mrs. Burke was positive she had seen three men involved in the initial breaking and entry —two of whom *actually entered* the building with the third remaining outside. When the police arrived only a few minutes later, they found Springle and one Moore in the basement storage room, with suitcases containing the loot, and another man, Ball, in the courtyard.

Under these circumstances, it is unlikely in the last degree that Springle was mistakenly identified as one of the three men who took part in the breaking and entry of the apartments. He explained his presence in the storage room by asserting that, while at a restaurant earlier that day, he and Moore had for the first time met a person named Lee who offered to pay them each a few dollars to help move some suitcases. Although both he and Moore agreed to the

offer, Springle asserted that the other two men left for the apartment building about twenty minutes ahead of him and that when he arrived, the door to the rear of the building was already open and Lee and Moore were in the storage room. He went on to say that Lee then left to hail a cab. Finally, while acknowledging an acquaintanceship with Ball, whom the police found in the courtyard, Springle insisted that Ball had not been at the restaurant when he and Moore encountered Lee and had not accompanied him to the apartment.

Springle's story is not merely difficult to credit but leaves important facts unexplained. For one thing, it is utterly incredible that Lee, the asserted instigator of the whole series of events, should simply have disappeared although the burglars were unaware that Mrs. Burke had alerted the police. For another, Springle's claim that he did not leave the restaurant for twenty minutes after Lee and Moore had departed conflicts with Mrs. Burke's testimony that the police arrived only a couple of minutes after she reported having seen three persons involved in a burglary. Finally, even if one should assume that "Lee" did in fact exist and that he and Moore were the two people whom Mrs. Burke saw actually enter the building (with Lee having exited and disappeared subsequently), Springle's exposition failed to account for the presence of Ball. In sum, if Mrs. Burke was mistaken in identifying Springle as one of the three burglars, there would be no explanation of the events that would commend itself to a rational mind.

When all this is added to the facts recited in my brother Moore's opinion, it is apparent there was no denial of due process here even though Mrs. Burke was unable to repeat the station-house identification in the courtroom, see United States ex rel. Phipps v. Follette, *supra*, 428 F.2d at 914–915 n. 3.