**UNITED STATES of America ex rel. Clyde CURTIS, Petitioner-Appellant,**

v.

**WARDEN OF GREEN HAVEN PRIS-ON, Respondent-Appellee.**

**No. 673, Docket 71–1768.**

United States Court of Appeals, Second Circuit.

Argued April 12, 1972.

Decided June 21, 1972.

Eugene A. Wolkoff, New York City (Gary B. Wolff, New York City, of counsel), for petitioner-appellant.

Lillian Z. Cohen, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before FRIENDLY, Chief Judge, and SMITH and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Clyde Curtis, convicted in 1969 after trial to a jury in County Court, Suffolk County, New York, of the crime of possession and sale of a dangerous drug, and presently serving an indeterminate sentence to a maximum of fifteen years at Green Haven Prison, sought his release by petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York. From the denial of his petition on July 13, 1971 by the Honorable John F. Dooling, Jr., 329 F.Supp. 333, he appeals. He contends, as he did in the state courts and in the court below, that both his fictitious name indictment and pre-trial identification by the arresting officers were constitutionally defective, and that certain prejudicial testimony by a prosecution witness deprived him of a fair trial. We find no error under the circumstances of this case and affirm the order below.

The indictment on which petitioner was tried was returned by the grand jury of Suffolk County on August 5, 1968 in two counts charging Henry "Doe" with the possession and sale of a narcotic drug, both in the second degree. Although both the detective who made the alleged drug purchase, Fricker, and another who observed the transaction, Fandrey, testified before the grand jury, the latter carrying with him a written description of Henry, no description of Henry "Doe" was given to the jury.[1] It appeared at a pre-trial identification hearing and at trial that although the two detectives knew the drug vendor only by the alias Henry, he had been under surveillance and observed, if fleetingly, by both men on several occasions prior to the sale, and was known to them as a specific identifiable person. Detective Fricker was of course afforded close observation at the time of the sale. A written description was promptly prepared of Henry which reasonably, although not precisely, fit petitioner.[2]

Subsequent to the issuance of the indictment and an accompanying bench warrant in the name Henry "Doe," the detectives learned that Henry's true name was Clyde Curtis. When petitioner's name was later discovered on a list of unrelated arrests, Detective Fricker proceeded to the place of detention, picked him out of a cell in which he was the only black, and executed the arrest warrant.

At petitioner's arraignment, when he was as yet unrepresented by counsel, the indictment was without objection amended pursuant to § 277 of the former New York Code of Criminal Procedure (McKinney 1958)[3] to read "Henry

---

1. The only testimony directed to the identity of Henry "Doe" was given by Detective Fricker:

   "Q. Do you know his name?
   A. First name only, Henry.
   Q. Have you as of yet learned the identy (sic) of his last name?
   A. No sir. I haven't.
   Q. Not as of today?
   A. No sir."

2. The description read:
   "Colored male, apparently thirty, thirty-five years of age, short, five foot eight, heavy build, balding, mustache, dark complexion, wearing a medallion."

3. Section 277 provides that:
   If a defendant is indicted by a fictitious or erroneous name, and in any stage of the proceedings his true name is dis-

'Doe', a/k/a Clyde Curtis." The trial judge denied after verdict a motion made at the close of all the evidence to dismiss the indictment for "legal insufficiency," reasoning that the grand jury did have someone specific in mind, and that regardless, any possible insufficiency in the indictment was cured by extrinsic evidence of identification developed at trial. Petitioner's conviction was unanimously affirmed without opinion by the Appellate Division, Second Department. People v. Doe, 33 A.D.2d 993, 309 N.Y.S.2d 115 (2d Dept. 1970). Leave to appeal to the Court of Appeals was denied on April 7, 1970.

On August 10, 1970 the Appellate Division responded to a motion by petitioner by amending its earlier decision to add the following:

> Upon the appeal herein, there were presented and passed upon the following constitutional questions, namely: whether appellant's rights under the 4th, 5th, 6th and 14th Amendments of the United States Constitution and of Par. 6 of Art. I of the New York State Constitution were denied by his indictment as "Henry Doe" and the subsequent amendment to indicate that "Henry Doe" was also known as "Clyde Curtis"; . . . none of his constitutional rights were violated;
>  . . .

Inasmuch as petitioner expressly raises his equal protection claim for the first time on this appeal, having cast the attack on his indictment in due process terms before the state courts and in the court below, the language of the Appellate Division's amended remittitur is critical to the resolution of the threshold question whether he has exhausted his state remedies in accordance with 28 U. S.C. § 2254(b), (c).

■■ It is plainly true that a statement by a court that it has considered a defendant's fourteenth amendment rights does not reveal with certainty that the equal protection clause was actually weighed. Still, a possible implication of the use of such broad language is that defendant's claim was considered in the light of all relevant portions of the fourteenth amendment. Thus, petitioner would have us conclude that the Appellate Division did consider his equal protection claim, although he did not in terms present it to that court.[4] We seriously question, though, whether this case satisfies the exhaustion requirement as interpreted in Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). That case held that state remedies had not been exhausted simply because all the relevant facts were before the state court and the correct legal principles could have been applied, but rather that "the substance of a federal habeas corpus claim must first be presented to the state courts," 404 U.S. at 278, 92 S.Ct. at 513. Only the Appellate Division's ambiguous amended remittitur possibly distinguishes this case from *Picard* in which there was no evidence in the record that the application of the relevant principle to the facts had come to the state court's attention. However, we are convinced that petitioner's equal protection claim is without merit and, the exhaustion requirement not being jurisdictional, see Darr v. Burford, 339 U.S. 200, 204–211, 70 S.Ct. 587, 94 L.Ed. 761 (1950); Frisbie v. Collins, 342 U.S. 519, 520–521, 72 S.Ct. 509, 96 L.Ed. 541 (1952), we consider it neither necessary nor appropriate to resolve the delicate question of federal-state comity in this instance but instead proceed to the merits.

---

covered, it may be inserted in the subsequent proceedings, referring to the fact of his being indicted by the name mentioned in the indictment.

4. In any case on return to the state courts the state might be expected to raise the argument that if petitioner's equal protection claim was not considered on direct appeal, it could have been, and that his failure to raise an issue available to him forfeits the remedy of *coram nobis*. *See* People v. Howard, 12 N.Y.2d 65, 236 N.Y.S.2d 39, 187 N.E.2d 113 (1962).

■ It is conceded that the fourteenth amendment does not require that a state court prosecution be preceded by a grand jury indictment, Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), Kennedy v. Walker, 135 Conn. 262, 63 A.2d 589, aff'd 337 U.S. 901, 69 S.Ct. 1046, 93 L.Ed. 1715, rehearing denied, 337 U.S. 934, 69 S.Ct. 1493, 93 L.Ed. 1740 (1949), but that whenever a state has chosen to afford its citizens the protection of an indictment procedure, as New York has done,[5] the equal protection clause must be satisfied. Coleman v. Alabama, 377 U.S. 129, 84 S.Ct. 1152, 12 L.Ed.2d 190 (1964); Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954). We will assume, *arguendo*, that the grand jury procedures selected by the state must comport with due process of law. Cf. Beck v. Washington, 369 U.S. 541, 546, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); United States ex rel. Chestnut v. Criminal Court of the City of New York, 442 F.2d 611, 616 (2d Cir. 1971). Unhappily for petitioner, however, both branches of his argument are met at that point by United States ex rel. Morrison v. Foster, 175 F.2d 495 (2d Cir. 1949) in which this court upheld the indictment for robbery of Morrison under the name "John Doe 4" without further description. Three accomplices were also indicted, one under his true name, the others as "John Doe 1" and "2." Morrison had already been arrested on suspicion of having participated in the robbery, but there was no evidence to connect him with the crime until, after the indictment had been filed, he admitted his complicity to a fellow inmate. Armed with this information the district attorney obtained an amended indictment, substituting Morrison's name for that of "John Doe 4" pursuant to § 277, *supra*, n. 3. While the constitutionality of § 277 was apparently questioned in *Morrison*, 175 F.2d at 497, it is not attacked on this appeal. *See* People v. Bogdanoff, 254 N.Y. 16, 29–31, 171 N.E. 890 (1930).

■■ In the light of *Morrison*, the contention that it violated due process merely to fail to provide the grand jury with a description of petitioner, where the jury must have realized it was indicting a specific individual, known to the testifying officers (albeit by the false name Henry) for a specific narcotics transaction, must fail. Indeed, apart from the court's reference to Morrison's failure to object at any time to the amended indictment, *Morrison, supra*, 175 F.2d at 497, 498, the instant case is stronger for the state: it does not appear that any description of Morrison was even available, or that the grand jury had focused on any particular individual, other than one who had been an accomplice in the commission of the stated crime. Here, to repeat, the grand jury found probable cause to believe a crime had been committed when a particular individual known by an alias passed narcotics to Detective Fricker. Even absent this obstacle, petitioner's claimed injury from a defective indictment was arguably eliminated by a trial jury's finding of guilt beyond a reasonable doubt. *Morrison*, 175 F.2d at 498.

■ Morrison's equal protection claim failed "because affirmance of his conviction shows that under like circumstances defendants in other cases would be subject to the same legal rules as were applied in his case." *Id.* That reasoning would seem to encompass petitioner's equal protection claim. Finally, granting, *arguendo*, the charge that the instant indictment was an aberration from normal procedure, an isolated failure to comply with an otherwise valid state law, even done consciously, does not without intentional or purposeful discrimination give rise to an equal protection claim. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497, re-

5. N.Y.Const., art. I, § 6 provides that:
No person shall be held to answer for a capital or otherwise infamous crime . . . unless on indictment of a grand jury. . . .

hearing denied, 321 U.S. 804, 64 S.Ct. 778, 88 L.Ed. 1090 (1944); Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

Nor are we persuaded that Connor v. Picard, 434 F.2d 673 (1st Cir. 1970), rev'd for failure to exhaust state remedies sub nom. Picard v. Connor, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), while it is not consistent with *Morrison,* necessarily points to a different result in this case. There the court did find a violation of equal protection in the substitution of Connor's name for an undescribed John Doe in the indictment under a statute similar to New York's fictitious name statute;[6] but there also the grand jury, rather than focusing on any specific individual, simply indicted whoever had committed the crime. Moreover Massachusetts' procedure, unlike that of New York, apparently allowed no attack on the indictment, *id.* at 673–674; here prompt protest by petitioner (ten months elapsed between his arraignment and trial) would simply have led to a superseding indictment.[7]

 Petitioner's remaining arguments are meritless. Assuming, *arguendo,* the correctness of the extremely dubious contention that United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967) as limited by Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) should be applied to the identification and arrest of a suspect, whether or not he may fortuitously be in custody for another crime, by police officers who have previously dealt with the suspect in an undercover capacity, we have no doubt that the state has established by clear and convincing evidence that the in-court identification by the officers emanated from a source independent of the disputed pretrial identification. United States v. Wade, *supra,* 388 U.S., at 241, 87 S.Ct. 1926, cf. United States v. Roth, 430 F.2d 1137, 1141 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d

633 (1971). Both detectives had seen petitioner for brief moments prior to the narcotics sale and both were to see him on three or four occasions afterwards. Detective Fandrey viewed the sale, which took place at night in a lighted shopping center parking lot, from a distance of 150 feet using night binoculars; Detective Fricker observed him full face at arm's length for over a minute while receiving the narcotics and produced an accurate contemporaneous description. Both detectives were confident of the accuracy of their identification; we see no reason to doubt them.

A prejudicial comment by one of the testifying officers was promptly mitigated by a curative instruction; any possible damage was *de minimis.* The judgment is affirmed.

---

6. Mass.Gen.Laws ch. 277, § 19.

7. N.Y.Code of Criminal Procedure §§ 312, 313 and 317. (McKinney 1958).