**UNITED STATES ex rel. Herbert BLYDEN, Petitioner,**

v.

**Arthur SINGERMAN, Warden, Bronx House of Detention for Men, et al., Respondents.**

**No. 71 Civ. 5610.**

United States District Court,
S. D. New York.

Sept. 25, 1972.

---

Richard Cherry, Emil, Kobrin, Klein & Garbus, by Martin Garbus, and Eve Cary, N.Y. Civ. Lib. Union, New York City, for petitioner.

Burton Roberts, Dist. Atty., Bronx County, by David Blatt, Asst. Dist. Atty., for respondent Singerman.

Louis J. Lefkowitz, Atty. Gen., State of N. Y., New York City, by Joel Lewittes, Maryellen Weinberg, and David H. Berman, Asst. Attys. Gen., for respondent Oswald and the State of New York.

### MEMORANDUM

BONSAL, District Judge.

Petitioner seeks a writ of habeas corpus on the ground that, at his trial, the identification of him by Dominick Maffucci, a prosecution witness whose testimony was the only evidence placing petitioner near the scene of the crime, was tainted by Maffucci's pre-trial identification in a show-up held at the police station, which petitioner contends was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [petitioner] was denied due process of law." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); Palmer v. Peyton, 359 F.2d 199 (4th Cir. 1966).

At about 1:45 on the afternoon of August 19, 1965, a man entered Alexander's Rent-A-Car office at 903 Sheridan Ave. in the Bronx, held up the attendant and a customer at gunpoint and took $600. The man ran out of the door and out of sight across an adjacent parking lot. Dominick Maffucci, a prosecution witness, testified that he observed a man carrying a paper bag get into a parked blue Mustang which then drove away. At trial, Mr. Maffucci identified petitioner as the driver of the getaway car. Shortly thereafter, the police found a blue Mustang parked about six blocks from the scene of the crime and discovered that it had been rented that morning by petitioner from the same Alexander's Rent-A-Car office that had been robbed. At trial, Mr. Maffucci was unable to identify the blue Mustang recovered by the police as the same one he saw parked near the scene of the crime.

On January 25, 1966, following a jury trial in the New York State Supreme Court, Bronx County (Dickens, J.), petitioner was convicted on two counts of robbery in the first degree. He was sentenced as a second felony offender to concurrent terms of 15 to 20 years in prison. His conviction was affirmed by the Appellate Division without opinion (People v. Blyden, 26 A.D.2d 908, 275 N.Y.S.2d 239 (1st Dept. 1966)) and by the Court of Appeals, also without opinion (20 N.Y.2d 675, 282 N.Y.S.2d 283, 229 N.E.2d 62 (1967)).

Petitioner filed a *pro se* petition for a writ of error coram nobis in the New York State Supreme Court, Bronx County, on June 16, 1969, presenting the question "whether petitioner is entitled to a hearing because the lineup procedure used to identify him was unfair and prejudicial, because said 'showup' deprived him of his right to effective counsel and adequate right to confront the accusers . . . ." In his "Argument and Reason for Hearing," petitioner stated, ". . . the trial Judge, the Hon. Thomas Dickens, precluded defense Counsel (Court appointed Legal Aid) from pursuing and fully exploring

the details surrounding the lineup (Trial Transcript pages 75–85 . . .) or the Station house 'Showup' at page 170–1 of Trial Transcript, . . . ." On October 29, 1969, Justice Fine denied the petition, stating that "[t]he only claim which merits consideration is the charge that the station house identification made by Jane Parker violated defendant's right to counsel and that it was so unnecessarily suggestive that it violated due process of law." The denial of the coram nobis petition was affirmed by the Appellate Division without opinion (311 N.Y.S.2d 976 (1st Dept. 1970)), and leave to appeal to the Court of Appeals was denied on September 3, 1970.

By memorandum filed on April 27, 1972, this court stated: "The record indicates that petitioner may have sought to raise the issue of Maffucci's in-court identification in his coram nobis petition . . . ." As no hearing had been held in the state court on the Maffucci identification, the court directed that a hearing be held to receive evidence as to whether petitioner had exhausted his state remedies with respect to the issue of the Maffucci identification, and as to whether petitioner's constitutional rights had been violated by the Maffucci identification in the police station.

The evidentiary hearing was held on May 11, 1972. The only evidence presented by petitioner on the exhaustion issue was an excerpt from a letter dated February 3, 1970, written by petitioner to the attorney who represented him on his appeal from the denial of his coram nobis petition, which excerpt was read into the record by petitioner's counsel, Mr. Garbus, as follows: "Concerning your request regarding showup in the station house, I was forced to put on shades, a cap, forced to pose for various viewers through a oneway mirror." (5–

6, 14–15) [1]. In his coram nobis petition, petitioner stated, ". . . said showup deprived him of his right to effective counsel . . . ."

In denying petitioner's coram nobis petition, Justice Fine stated that the only identification claim which merited consideration was the station house identification of petitioner by one Jane Parker. Petitioner's letter above referred to did not name Maffucci as having been present at a pre-trial showup. Petitioner contends that his brief on appeal raised the issue of the Maffucci identification.[2] However, the purport of the brief was that Justice Fine's ruling that the Parker in-court identification was untainted "beyond a reasonable doubt" was error. See United States ex rel. Nelson v. Zelker, 465 F.2d 1121 (2d Cir. 1972). While petitioner testified at the hearing that he was aware that Maffucci had observed him at a pre-trial showup (19), at his trial he did not question the Maffucci identification, and there is no reference to it in the trial transcript.

■ ■ To exhaust state remedies, "Under Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), the test is whether the state court had 'a fair opportunity' to consider the alleged constitutional defect." United States ex rel. Nelson v. Zelker, 465 F.2d 1124 (2d Cir. 1972). This means that the "application of the relevant principle to the facts" must have come to the state court's attention. United States ex rel. Curtis v. Warden of Green Haven Prison, 463 F.2d 84 (2d Cir. 1972). See also United States ex rel. Rogers v. LaVallee, 463 F.2d 185 (2d Cir. 1972) (To exhaust state remedies, the federal claim must be "fully presented to the state courts . . . .") On the basis of the record, the court concludes that the state courts did not have a "fair oppor-

---

1. Numbers refer to pages of the transcript of the hearing held on May 11, 1972 unless otherwise indicated.

2. Point 1 of petitioner's brief on appeal contained the following statement:

"We submit . . . that a hearing be held to determine whether the in-court identification of Blyden by Maffucci and Parker was free from taint."

tunity" to consider the Maffucci identification because the issue was never "fully presented to the state courts." Picard v. Connor, *supra* at 276, 92 S.Ct. at 512; United States ex rel. Rogers v. LaVallee, *supra*; United States ex rel. Curtis v. Warden of Green Haven Prison, *supra*.

Accordingly, the petition for a writ of habeas corpus must be denied as petitioner has failed to exhaust his state remedies (28 U.S.C. § 2254(b)). Leave to appeal *in forma pauperis* or for a certificate of probable cause is denied.[3]

It is so ordered.

---

3. In view of the foregoing, it is inappropriate to express any views as to whether petitioner's constitutional rights were violated by the Maffucci identification. However, the evidence presented at the hearing did not indicate that considering the totality of circumstances the identification was "so 'unnecessarily suggestive' and 'conducive to irreparable mistaken identification' as to amount to a denial of due process." United States ex rel. Springle v. Follette, 435 F.2d 1380, 1382 (2d Cir. 1970), cert. denied, Springle v. Zelker, 401 U.S. 980, 91 S. Ct. 1214, 28 L.Ed.2d 331 (1971). See also United States ex rel. Frasier v. Henderson, 464 F.2d 260 (2d Cir. 1972).

The showup occurred within two to four hours after Maffucci observed the driver of the getaway car (135–136, 153). See United States ex rel. Williams v. LaVallee, 415 F.2d 643 (2d Cir. 1969), cert. denied sub nom. Williams v. Follette, 397 U.S. 997, 90 S.Ct. 1139, 25 L.Ed.2d 406 (1970); United States ex rel. Springle v. Follette, *supra* at 1383; United States ex rel. Rutherford v. Deegan, 406 F.2d 217 (2d Cir.), cert. denied 395 U.S. 983, 89 S.Ct. 2145, 23 L.Ed.2d 771 (1969). Detective Fitzpatrick and Mr. Maffucci both testified that Mr. Maffucci was alone when he viewed petitioner at the police station (83, 156). See Jackson v. United States, 134 U.S.App. D.C. 18, 412 F.2d 149, 154 (1969).

Mr. Maffucci made a positive identification of petitioner as the one who drove the getaway car, and even noticed that he was wearing a different colored jacket. (67, 73, 124). Maffucci looked for a total of one to two minutes and while he looked, petitioner did not pose, nor was he wearing a hat or sunglasses, nor did he have anything in his hand. (77, 89, 92–93, 124, 154). See United States ex rel. Williams v. LaVallee, *supra* at 645; United States ex rel. Bisordi v. LaVallee, 461 F.2d 1020, (2d Cir. 1972).

Mr. Maffucci had a good opportunity to observe petitioner while petitioner was in the car. Petitioner was about thirty feet away (112) and it was broad daylight. Mr. Maffucci testified that he saw the full face of the petitioner though "mainly the profile on the side" for a good five minutes (107) and saw that petitioner had a goatee (74). However, petitioner did turn and Mr. Maffucci did see him face to face quite a few times (121–122). See United States ex rel. Phipps v. Follette, 428 F.2d 912, 915 (2d Cir.), cert. denied 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970); United States ex rel. Rutherford v. Deegan, *supra*; United States ex rel. Anderson v. Mancusi, 413 F.2d 1012 (2d Cir. 1969).

Mr. Maffucci testified that he watched the man in the car because he had been looking over at his (Maffucci's) office (53). Maffucci testified that two weeks before, two men had attempted to rob him, so when anyone "hung around," he watched them closely (101). See United States ex rel. Phipps v. Follette, *supra* at 915; United States ex rel. Bisordi v. LaVallee, *supra*.

Finally, Mr. Maffucci testified that at Blyden's trial he was absolutely certain that petitioner was the man in the driver's seat of the getaway car and that his in-court identification was based solely on his observation of petitioner at his parking lot (124–125). See Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1242 (1968), cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); United States ex rel. Bisordi v. LaVallee, *supra*.