**U. S. ex rel. William BILLUPS, Petitioner,**

**v.**

**Ernest L. MONTANYE, Superintendent, Attica Correctional Facility, Attica, New York, Respondent.**

**No. 73 Civ. 2975-LFM.**

United States District Court, S. D. New York.

Dec. 6, 1973.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for respondent; Constance B. Margolin, Deputy Asst. Atty. Gen., of counsel.

## OPINION

MacMAHON, District Judge.

Petitioner William Billups, confined in Attica Correctional Facility, Attica, New York, collaterally challenges, pro se, under 28 U.S.C. § 2254, a conviction and a sentence of thirty to forty years imposed by the Supreme Court, New York County, on June 17, 1968, following a jury trial.

Petitioner was convicted of robbery in the first degree, grand larceny in the first degree, assault in the second degree, possession of a dangerous weapon, rape in the first degree, burglary in the first degree, sodomy in the first degree and attempted sodomy in the first degree. Petitioner's conviction was affirmed by the Appellate Division, First Department, without opinion. 33 A.D. 2d 1104, 308 N.Y.S.2d 295 (1970).

Petitioner claims violations of the Fourth and Fourteenth Amendments, alleging: (1) certain in-court identifications of him were tainted by pretrial identifications during which he did not have counsel; (2) an ex parte order directing the Department of Corrections to produce a watch in court was improperly issued by the trial court because his counsel was not notified; and (3) he was denied due process because the trial court refused to sever the charges against him into two separate trials.

It appears that petitioner and three others were accused in one indictment of two brutal attacks on two different groups of persons occurring on the separate evenings of August 12 and August 14, 1967. On each occasion, the defendants were alleged to have followed three persons into an apartment, where they robbed, threatened and beat them, repeatedly raping the women in the groups.

We will first consider the identifications made by Barbara Keating, Ted Greene and Cynthia Brucksch, victims of the August 12 crimes, all of whom identified petitioner as one of the perpetrators.

Miss Keating testified that although she was raped twelve times, she was able to observe and speak to the criminals at very close range from 11:00 P.M. on August 12 to 5:00 A.M. the following morning. Ted Greene was blindfolded for about four hours, but after the blindfold was removed he observed the perpetrators clearly for three hours. Miss Brucksch also observed the four men at close range for six hours in the early morning of August 13.

Ted Greene identified petitioner as one of the perpetrators when Billups was brought before him alone in the station house on August 21. When told by the detective in charge to "be positive—make sure. I don't want any wrong identification," Greene replied, "No, there's no doubt in my mind."

Four days later, on August 25, Miss Keating, Miss Brucksch and Mr. Greene all identified the four defendants as the perpetrators in Part 1–A of Criminal

Court. A large crowd was milling about the courtroom during the hour they sat there, yet each of the victims, all unaware of why they were told to be present, immediately recognized four of six men as the perpetrators as they were led into the room by Detective Matarazzo. All three victims testified at the pretrial hearing that they could readily recognize and identify the defendants independent of their viewing them on August 21 or 25.

We now consider the identifications by the victims of the August 14 crimes.

Karen Trimble and Pauline Turner, victims of the August 14 crimes, also identified petitioner as one of the perpetrators. Mrs. Turner observed the four men in her apartment late on the night of August 14 for fifteen to twenty minutes before they blindfolded her and for about thirty to forty minutes in the early morning of August 15, after her blindfold was removed. She viewed the men's faces clearly and at close range and particularly remembered petitioner's face because he attempted to stab her, nicking her in the ribs, shortly before the men left her apartment on the morning of August 15. Miss Trimble viewed the defendants, whose faces she could see clearly, for two hours on August 14. She testified that she saw petitioner stab Mrs. Turner.

Miss Trimble and Mrs. Turner, on August 15, separately viewed a man named John Moses, who bore a striking resemblance to Raymond Gilliard, one of the defendants, and mistakenly identified Moses as one of the assailants. Several days later, however, upon seeing all the defendants, the women immediately corrected their mistakes. On August 20, Miss Trimble identified petitioner at the station house through a one-way mirror.

Miss Trimble and Mrs. Turner identified petitioner and the other defendants as the perpetrators on August 25 in Part 1–A of Criminal Court as the men were led into the courtroom. Both Miss Trimble and Mrs. Turner testified that they could recognize and identify the defendants, even without having seen them previously.

■ Following an evidentiary hearing, the state trial court found the in-court identifications admissible under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), because the state had established that the identifications were based on observation of the defendants at the time of the crime rather than on any suggestive pretrial identifications. The court ruled, however, that since petitioner was not represented by counsel at the pretrial identifications, the prosecution could not use evidence relating to the pretrial identifications at trial. We find no denial of petitioner's constitutional rights by the state court in admitting the in-court identifications.

In *Wade,* the Supreme Court established the rule that a defendant's counsel must be present at all pretrial identifications. However, the Court also held that an in-court identification would be admissible where the prosecution could "establish by clear and convincing evidence that the in-court identifications were based upon observation of the suspect other than the lineup identification." 388 U.S. at 240, 87 S.Ct. at 1939. The Court indicated that the trial court should consider, among other factors, the prior opportunity of the witness to observe the criminal act, any identification prior to a lineup, failure to identify a defendant on a previous occasion, and the lapse of time between the crime and the identification. *Id.* at 241, 87 S.Ct. 1926.

Here, all the witnesses had extensive opportunities to observe petitioner and his co-defendants while the crimes were in progress. These observations, while made under great stress, were at very close range and of long duration. Considering the vicious nature of the crimes and the extent and quality of the observations, the possibility of an erroneous identification by any of the witnesses was very slight. None of the witnesses

failed to identify petitioner upon observing him for the first time after the crime, nor did they ever identify another person as petitioner. Finally, all the initial identifications occurred within two weeks or less of the crimes, when the witnesses' recollection of the perpetrators was fresh.

We conclude that the in-court identifications of petitioner were based upon the witnesses' extensive observation of him at the time of the crime, not on any pretrial identifications. We hold, therefore, that petitioner's constitutional rights were not violated by the admission of the in-court identifications by the trial court. United States ex rel. Curtis v. Warden of Green Haven Prison, 463 F.2d 84 (2d Cir. 1972); United States ex rel. Cummings v. Zelker, 455 F.2d 714 (2d Cir.), cert. denied, 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1972).

▇ Petitioner also claims that an ex parte order issued by the trial court, directing the Department of Corrections to produce a watch in court from petitioner's personal belongings, violated the Fourth and Fourteenth Amendments. Petitioner seems to argue that since his counsel was not notified of the application, the order was invalid.

We fail to conceive of any deprivation of petitioner's rights in the procedure followed. The watch matched a description given to Detective Matarazzo by Pauline Turner, one of the August 14 victims, as having been worn by one of the assailants on his belt. Thus, if we regard the production pursuant to the court order as a seizure, probable cause clearly existed. Detective Matarazzo therefore properly applied for the order. Petitioner later challenged its validity by a motion to suppress the watch as evidence. The trial court denied the motion after a hearing. Any objections petitioner might have had to the order could and should have been raised at the suppression hearing.

Finally, petitioner claims that he was deprived of a fair trial because the trial court denied his motion to sever the charges against him into two trials, one dealing with the events of August 12 and the other with the events of August 14. The New York Code of Criminal Procedure, § 279, in effect at the time of trial but since repealed, provided:

> "[W]here the charges involve two or more acts or transactions constituting crimes of the same or a similar character which are neither connected together nor parts of a common scheme or plan the court, in the interests of justice and for good cause shown, may, in its discretion, order that the different charges set forth in the indictment . . . be tried separately." See N.Y. CPL § 200.20, subd. 3 (McKinney's Consol.Laws, c. 996, 1971).

▇ It is clear from the statute that the decision to sever is discretionary with the trial judge. Petitioner has failed to demonstrate that he suffered any prejudice due to the trial court's refusal to grant the motion to sever. More significantly, however, this claim does not raise questions of constitutional dimension but solely questions of state law regarding the trial judge's exercise of discretion. 28 U.S.C. § 2254(a); United States ex rel. Evans v. Follette, 364 F.2d 305, 306 (2d Cir. 1966), cert. denied, 385 U.S. 1016, 87 S.Ct. 733, 17 L.Ed.2d 552 (1967).

Accordingly, this application is denied. A certificate of probable cause (28 U.S.C. § 2253) will not issue since there are no questions of substance on which the Court of Appeals should rule. Finally, we certify that any purported appeal from this order in forma pauperis is not taken in good faith because an appeal would be frivolous. 28 U.S.C. § 1915(a); Coppedge v. United States, 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed. 2d 21 (1962); United States v. Visconti, 261 F.2d 215, 218 (2d Cir. 1958), cert. denied, 359 U.S. 954, 79 S.Ct. 743, 3 L. Ed.2d 762 (1959).

So ordered.