**The STATE of Ohio, Appellee,**

**v.**

**WILSON, Appellant.**

[Cite as *State v. Wilson,* 162 Ohio App.3d 119, 2005-Ohio-2108.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–03–1180 and L–03–1174.

Decided April 29, 2005.

Julia R. Bates, Lucas County Prosecuting Attorney, and Craig Pearson, Assistant Prosecuting Attorney, for appellee.

Ann M. Baronas, for appellant.

HANDWORK, Judge.

{¶ 1} This appeal is from the May 27, 2003 judgment of the Lucas County Court of Common Pleas, which sentenced appellant, Christopher Wilson, following his conviction of robbery, a violation of R.C. 2911.02(A)(3). Upon consideration of the sole assignment of error, we affirm the decision of the lower court. Appellant asserts the following assignment of error on appeal:

{¶ 2} "The trial court erred in denying appellant's motion to suppress the one-on-one identification."

{¶ 3} Appellant moved to suppress his identification and all evidence flowing from his identification, arguing that the identification was the result of an impermissibly suggestive procedure. Following a hearing, the motion was denied

on January 31, 2003. The case proceeded to a jury trial. Appellant was convicted and sentenced. Appellant now appeals from the sentencing judgment, raising only the issue that his out-of-court identification should have been suppressed.

{¶ 4} At the motion-to-suppress hearing, the following evidence was presented. Eleanor Medon, who is 71 years old, testified that on December 9, 2002, at about 12:30 p.m., she was walking alone when she noticed that someone was following ten to 12 feet behind her. She saw that the man was white, about "medium" height, and looked like a "kind and decent" man. He was wearing a knit cap. She began walking faster, but she had to stop because she was out of breath. As she turned around to look at the man, he walked a few steps into a parking lot and looked at a car. When she started walking again, she noticed he was following her again. When she stopped at the bus stop and sat on the bench to catch her breath, the man approached her. He asked her what time it was. Then, he asked for her purse and grabbed it. She looked directly at him as he grabbed the purse and wrestled with her. After he ran with her purse, she tried to follow him. A couple came out of a nearby bank, chased the man, and recovered her purse.

{¶ 5} While people swarmed around the area, Medon went to the post office to mail a package. An officer tracked Medon down and drove her back to the scene at approximately 1:20 p.m. While they traveled, the officer explained to Medon that she was to tell the officer whether the person they were going to see was the man who had robbed her. The officer stressed that if Medon had any doubt, she was to tell the officer. As they arrived at the scene, the officer was watching Medon's reactions. Appellant was standing next to an officer and the officer's vehicle. Appellant was facing the officer and victim as they approached. They first saw him at a distance of about 200 feet away and passed him at a distance of 35 to 40 feet away. The officer noticed that Medon's eyes got wider, and she looked stunned as she and the officer approached. Medon recognized the man as the one who had taken her purse, and she started to cry. Medon was unable to identify appellant at the hearing, but she was certain that the man she had seen on the street was the man who had robbed her. At the hearing, the officer identified appellant as the man whom Medon had identified on the street.

{¶ 6} In his sole assignment of error, appellant argues that the one-on-one identification was unreliable and highly suggestive because Medon saw the robber for only a few seconds, she could not describe the robber in any detail, she saw appellant surrounded by police officers and cruisers, and Medon was upset at the time of the identification. Appellant also argues that the fact that Medon could not identify appellant at trial as the person who stole her purse further demonstrates that the identification procedure in this case was unreliable and highly suggestive.

{¶ 7} We agree with appellant that the practice of using a one-person "show-up" is inherently suggestive. *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, at ¶ 24 citing *State v. Broom* (1988), 40 Ohio St.3d 277, 284, 533 N.E.2d 682, citing *Stovall v. Denno* (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199. However, under certain circumstances, such as when the show-up occurs shortly after the time of the crime, the identification can be very accurate. *State v. Madison* (1980), 64 Ohio St.2d 322, 332, 18 O.O.3d 491, 415 N.E.2d 272, citing *Bates v. United States* (C.A.D.C.1968), 405 F.2d 1104. Accord *Sewell v. Cardwell* (C.A.6, 1972), 454 F.2d 177, 180, and *United States v. Follette* (C.A.2, 1970), 435 F.2d 1380, 1383, certiorari denied (1971), 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331. Therefore, we must consider whether under the totality of the circumstances, the identification of appellant was reliable in this case. In doing so, we must consider several factors, including (1) the witness's opportunity to view the suspect at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, and (5) the time between the crime and the confrontation. *Manson v. Brathwaite* (1977), 432 U.S. 98, at 114, 97 S.Ct. 2243, 53 L.Ed.2d 140; *Neil v. Biggers* (1972), 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401.

{¶ 8} In this case, the victim had ample opportunity to view the suspect from a distance and up close. Her attention was drawn to him because of his suspicious behavior and the tug of war with the purse. The victim was able to describe the robber as a young white male wearing a knit cap. Although she was unable to provide a more detailed description of the robber, that inability does not automatically disqualify her from being able to recognize the robber when seeing him less than an hour later. The officer explained that she conducted the show-up because of the victim's advanced age. Realizing the danger of a suggestive show-up, the officer took care not to bias the victim during the drive by. The officer specifically noted the victim's reactions to make sure that the victim was being honest. Finally, the victim was certain that the man shown to her was the man who had robbed her.

{¶ 9} After weighing all the factors of reliability, we find that there was not a substantial likelihood of misidentification in this case. Therefore, we find that the trial court did not err in denying the motion to suppress. Appellant's sole assignment of error is not well taken.

{¶ 10} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed.

Judgment affirmed.

PIETRYKOWSKI and SKOW, JJ., concur.