UNITED STATES of America ex rel.
Lonnie Leston GIBBS, Petitioner-
Appellant,

v.

John L. ZELKER, Superintendent of
Green Haven Correctional Facility,
Stormville, New York, Respondent-Appellee.

No. 75, Docket 73–1391.

United States Court of Appeals,
Second Circuit.

Argued Nov. 7, 1973.

Decided April 23, 1974.

Michael Young, New York City (Robert Kasanof, The Legal Aid Society, New York City, on the brief), for petitioner-appellant.

Gene B. Mechanic, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., and Stanley L. Kantor, Deputy Asst. Atty. Gen., New York City, on the brief), for respondent-appellee.

———————

Before WATERMAN, FRIENDLY and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Petitioner Gibbs, a New York state prisoner now incarcerated at the Green Haven Correctional Facility, appeals from an order entered February 28, 1973 in the Southern District of New York, Lee P. Gagliardi, *District Judge,* dismissing without a hearing Gibbs' second petition for a writ of habeas corpus. We affirm the dismissal of the petition on the ground that Gibbs has not exhausted state remedies as required by 28 U.S.C. § 2254(b) and (c) (1970). Specifically, we hold that, since he did not raise in the New York state courts the same federal constitutional claims which he now urges upon the federal courts, the New York courts did not have a fair opportunity to consider those claims. Picard v. Connor, 404 U.S. 270, 276 (1971); United State ex rel. Nelson v. Zelker, 465 F.2d 1121, 1123–25 (2 Cir.), cert. denied, 409 U.S. 1045 (1972).

Gibbs and his co-defendant Navarro were convicted of second degree murder on September 30, 1966 in the Rockland County Court after a 10 day jury trial before Judge (now Justice) Morton B. Silberman. On October 24, 1966, Gibbs was sentenced to a term of 20 years to life. His conviction was affirmed on direct appeal by the Appellate Division on July 7, 1969, 32 App.Div.2d 1028, 303 N.Y.S.2d 836 (2nd Dept. 1969) (mem.), and by the New York Court of Appeals on November 17, 1971, 29 N.Y.2d 754, 276 N.E.2d 236, 326 N.Y.S.2d 402 (1971) (mem.). While Gibbs' direct appeals were pending in the New York courts, he filed in the Rockland County

Court two coram nobis petitions which were denied by Judge Silberman on July 8, 1967 and by Judge Kelly on February 17, 1971, respectively.[1]

The crime of which Gibbs was convicted occurred on April 4, 1966. Late that day the body of Archie Loper was found in a parking lot in Spring Valley, New York. He had been stabbed to death. Shortly after the discovery of Loper's body, the Spring Valley police arrested Navarro in connection with the murder. Navarro was a friend and roommate of Gibbs.

Later on the evening of April 4, Gibbs was taken to the Spring Valley police station for questioning concerning the death of Loper. He was questioned by the chief of police and several policemen, as well as by the district attorney and several members of his staff.

The next day, April 5, he was taken before an acting police justice who ordered him confined as a material witness. He was so confined until April 28 when he was indicted, along with Navarro, for the Loper murder.

On April 7, after consulting with his girlfriend who previously had spoken with the police, Gibbs led the police to a vacant lot where they found hidden among the bushes a small knife which belonged to Navarro and was said to be the murder weapon.

During this entire period, beginning with his initial questioning on April 4 until his indictment on April 28, Gibbs was held without the assistance of counsel; nor was he informed that he was entitled to counsel.

It is the propriety of the introduction of the knife and the testimony about Gibbs leading the police to the knife that is the subject of the instant habeas corpus petition.

Cutting through the procedural morass which has ensued in the federal courts since Gibbs filed his first petition for a writ of habeas corpus in the Southern District of New York on January 27, 1972, we focus upon the essential claim that has now emerged, namely, whether certain of his federal constitutional rights were violated by the admission in evidence at his state trial of the knife and testimony concerning Gibbs leading the police to the knife. Despite Gibbs' assertion before us and the district court's finding below that Gibbs had exhausted state remedies, our threshold inquiry must be directed to that issue, for absent compliance with the exhaustion requirement of § 2254(b) and (c), the district court would have had no jurisdiction to grant habeas corpus relief to this state prisoner upon a claim of denial of federal constitutional rights raised in the federal court for the first time.

■ Gibbs argues that admission of the challenged evidence violated his constitutional rights on two grounds. First, he claims that his detention as a material witness was constitutionally impermissible because the order confining him was illegal under New York law, having been signed by an acting police justice rather than by a judge of a court of record. Gibbs asserts that, since the evidence concerning the knife and his knowledge of its whereabouts was a fruit of this illegal detention, it was inadmissible at trial. Secondly, Gibbs claims that he was interrogated while in custody without having been given the Miranda warnings[2] and that

---

1. The record before us does not include Gibbs' coram nobis petitions, nor the written opinions denying them. Counsel for neither side has furnished us with citations to these opinions, if they are reported, nor have we been informed whether appeals were taken from the orders denying the petitions. Since both were denied while the direct appeals were pending, we assume that the coram nobis petitions and the orders entered thereon contributed no more to the exhaustion of state remedies than did his brief on direct appeal to the New York Court of Appeals, referred to below.

2. Miranda v. Arizona, 384 U.S. 436 (1966).

While the interrogation of Gibbs took place in April 1966, prior to the *Miranda* decision on June 13, 1966, the *Miranda* rule with respect to the admissibility of evidence applies

this illegal questioning led directly to the discovery of the knife. Accordingly, Gibbs contends that, since his rights under the Fourth, Fifth and Sixth Amendments were violated during his illegal detention between April 4 and April 28, 1966, the admission in evidence of the knife and related testimony as the tainted product of that detention and the questioning resulted in a constitutionally infirm conviction.

■ While we do not reach the merits of Gibbs' constitutional claims in view of our holding that he has not exhausted state remedies,[3] we do note in passing that at least the Fifth Amendment claim is a most serious one.[4] Although *Miranda* is notably silent on the question of the fruits of proscribed interrogation, we see no tenable distinction between a question requesting Gibbs to tell what happened after the killing and a request by the police that he show them where the knife had been discarded. The latter would seem to be as much within the scope of the privilege against self-incrimination as the former, even recognizing as we do that the privilege protects only against the giving of testimony.

The only indications in the papers before us that have any bearing upon exhaustion of state remedies are the affidavit of Gibbs in support of an unsigned order to show cause by which he sought to bring on a motion in the County Court to suppress the knife as evidence at trial, and Gibbs' brief in the New York Court of Appeals on his direct appeal.[5] Our careful examination of both documents leaves us with the firm conviction that neither presented Gibbs' constitutional claims, which are now urged upon the federal courts, to the New York courts in such a manner as to afford the state courts a fair opportunity to consider them as required by *Picard* and *Nelson*.

The affidavit attached to the proposed order to show cause relies almost entirely on the asserted invalidity of Gibbs' detention under state law because the confinement order was signed by an acting police justice. There is no mention whatever of any Fifth Amendment claim such as that here raised, either denominated as such or spelled out in substance. The general assertion that "the search and resulting seizure of the aforementioned knife was in violation of

---

to all trials subsequent to the date of that decision. Johnson v. New Jersey, 384 U.S. 719, 734 (1966). The trial of Gibbs began September 9, 1966.

3. The district court likewise did not reach the merits of Gibbs' constitutional claims. It held that, if there was error in the admission of the knife and testimony concerning it, such error was harmless beyond a reasonable doubt. While we would have difficulty, on the record before us, in justifying denial of the petition on that ground, it is unnecessary for us to reach that issue in view of our holding that state remedies have not been exhausted.

4. We do not comment on the merit of his Fourth Amendment claim beyond noting that clearly there was probable cause for detaining Gibbs under the principle stated in Bacon v. United States, 449 F.2d 933 (9 Cir. 1971), and that there would have been no violation of the Fourth Amendment if New York had conferred the power of confinement on police justices as well as on judges of courts of record. Gibbs' argument under

the Fourth Amendment therefore reduces itself to reliance on a dictum for four Justices in Ker v. California, 374 U.S. 23, 37 (1963), where the holding was that the arrest was within the California statute.

In a letter addressed to the Court subsequent to argument, Gibbs' counsel has added a citation to Beightol v. Kunowski, 486 F.2d 293 (3 Cir. 1973) ; but we do not read that case as standing for any general proposition that a search or seizure violative of state law violates the Fourth Amendment. Gibbs' reliance in the same letter on the "sham detention" doctrine of United States v. Edmons, 432 F.2d 577 (2 Cir. 1970), is plainly inappropriate, since whatever Gibbs may have been in addition, he was certainly a material witness—a matter of real and legitimate interest to the police.

5. This material is relied on by Gibbs on the instant appeal primarily to negate the State's claim of a deliberate by-pass by Gibbs of adequate state procedures available to test the constitutional claims now raised in the instant federal habeas corpus proceeding.

my constitutional rights" was an even less adequate presentation to the state courts of the claim we consider Gibbs' strongest than was the presentation which we found inadequate in United States ex rel. Nelson v. Zelker, *supra,* 465 F.2d at 1125, while acknowledging there that "a general due process argument was made in the state court . . . ." *Ibid.*

Gibbs' brief in the New York Court of Appeals—a most puzzling document—is likewise inadequate to exhaust state remedies on the issues here sought to be raised. We are told that this brief is supposed to have presented both the Fourth and Fifth Amendment issues to New York's highest court. True, it does talk about the signature of the detention order by an acting police justice who is said to have lacked authority to confine a material witness under New York law. The brief also makes some mention of lack of counsel and warnings—but all in the context of the requirements of New York law. The Court of Appeals could well have read the entire document and never have realized that a Fifth or Sixth Amendment claim was being made. Indeed, there is not a single reference to the *Miranda* decision in Gibbs' brief, although by the time the brief was filed *Miranda* had been on the books for five years.

In short, we hold that the federal constitutional claims which Gibbs now seeks to have adjudicated in the federal courts were never "fairly presented to the state courts". Picard v. Connor, *supra,* 404 U.S. at 275. While we would hardly insist that the asserted inadequacy of the acting police justice's signature be raised in the state court in the specific garb of a federal constitutional question, so long as it had been adequately litigated there as a state question and the Fourth Amendment claim rested entirely on alleged violation of state procedural requirements, still in the circumstances here presented it cannot be said that to raise the detention question and to omit the more clearly appealing *Miranda* claim which is similarly directed to the circumstances of discovery of the knife gave the state courts a fair chance at resolving the constitutional problems of petitioner's case. Cf. Schiers v. People of State of California, 333 F.2d 173, 175–76 (9 Cir. 1964).

Paraphrasing Judge Mulligan's observation in United States ex rel. Nelson v. Zelker, *supra,* which we find equally applicable here:

"appellant has been convicted of murder in the [second] degree by a state court and has been sentenced to [20 years to] life imprisonment in a state institution. His attack is upon the conduct of the [police] and of the [state court judge] who participated in that trial. It would indeed be violative of § 2254(b) as construed in Picard v. Connor to deny the state court the opportunity to review the propriety of the actions of its court . . . , under attack here, in a constitutional posture never fairly or substantially presented to it. United States ex rel. Rogers v. LaVallee, 463 F.2d 185 (2 Cir. 1972)." 465 F.2d at 1124–25.

We agree.

Accordingly, we affirm the dismissal of the petition on the ground that petitioner has not exhausted state remedies.[6]

---

6. New York provides an adequate post-conviction procedure to adjudicate previously unconsidered constitutional claims. N.Y. Criminal Procedure Law § 440.10(1)(h) (McKinney 1971).

Based on our holding above, we need hardly add that in our view Gibbs' constitutional claims referred to herein have not been previously determined on the merits by the New York state courts upon direct appeal from the judgment of conviction. See N.Y. Criminal Procedure Law § 440.10(2)(a) (McKinney 1971).