UNITED STATES of America ex rel. Larry JOHNSON, Petitioner-Appellee,

v.

Leon J. VINCENT, Superintendent of Green Haven Correctional Facility, Stormville, New York, Respondent-Appellant.

No. 1053, Docket 74–1401.

United States Court of Appeals, Second Circuit.

Argued June 13, 1974.

Decided Nov. 8, 1974.

Certiorari Denied March 24, 1975.

See 95 S.Ct. 1435.

Lillian Z. Cohen, Asst. Atty. Gen., State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirschowitz, First Asst. Atty. Gen., and Constance B. Margolin, Asst. Atty. Gen., New York City, on the brief), for respondent-appellant.

John J. Tigue, Jr., New York City (Elizabeth B. DuBois, Mark C. Morril, Legal Action Center of the City of New York, New York City, on the brief), for petitioner-appellee.

Before LUMBARD, HAYS and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The State of New York appeals from an order entered January 30, 1974, after an evidentiary hearing in the Southern District of New York, Bauman, *District Judge* *, granting a state prisoner's petition for a writ of habeas corpus, vacating his murder conviction and remanding his case for resentencing nunc pro tunc so that he can prosecute another direct appeal in the state courts.[1] We reverse the order of the district court and dismiss the petition on the ground that petitioner has failed to exhaust state remedies as required by 28 U.S.C. § 2254(b) and (c) (1970). Specifically, we hold that, since Johnson failed properly to raise in the state courts the federal constitutional claim which he now urges upon the federal courts, the state courts have not had a fair opportunity to consider that claim.

---

* This district judge has since resigned.

1. On February 26, 1974, the district court stayed its order pending this appeal.

## I.

A brief summary of the prior proceedings in this case is believed necessary to an understanding of our ruling on the issue raised on appeal.

Petitioner, Larry Johnson, and a codefendant, Boyce Thompson, were convicted of murder on December 11, 1969 in the Bronx County Supreme Court after a trial before Justice Charles G. Tierney and a jury. On January 24, 1970, Johnson was sentenced to a term of 15 years to life. His conviction was unanimously affirmed on direct appeal by the Appellate Division on December, 9, 1971. 38 App.Div.2d 689, 327 N.Y.S.2d 545 (1st Dept. 1971) (mem.). Leave to appeal to the New York Court of Appeals was denied on January 25, 1972.[2]

On July 17, 1972, Johnson filed a second motion in the Bronx County Supreme Court to vacate his judgment of conviction. Johnson claimed for the first time in this motion that the trial court erroneously had failed to grant the request of his trial counsel to instruct the jury with respect to the crime of assault which he asserted was a lesser included offense embraced within the crime of homicide for which he was charged and convicted. He claimed further that the failure of his appellate counsel to raise this alleged error rendered ineffective his representation on appeal.[3] Noting that the inadequate representation claim was not properly before him on a motion to vacate judgment, Justice Arnold L. Fein of the Bronx County Supreme Court denied Johnson's motion on September 5, 1972.[4] Leave to appeal from this order was denied by Justice Aron Steuer of the Appellate Division on October 31, 1972.

On February 2, 1973, Johnson filed in the district court a petition for a writ of habeas corpus based on substantially the same grounds as those alleged in his second motion in the state trial court to vacate his judgment of conviction.[5]

The crime for which Johnson was convicted occurred on December 14, 1968. Late that day, Johnson, Thompson, Perry Ford and two other individuals met one Nicholas Chambers. The six went together to the Bronx apartment of Linda West Mullins, Ford's common law wife. At the apartment Mullins identified Chambers as the individual who recently had burglarized her apartment. Chambers denied the accusation. He thereupon was beaten savagely—chiefly by Ford—in an effort to compel Chambers to disclose the whereabouts of the items he was accused of having stolen. The others participated with Ford—but to a lesser degree—in beating Chambers.

Ford, Johnson and Thompson carried the semi-conscious Chambers from Mullins' apartment up a flight of stairs to the roof of the apartment building. On the roof a fight ensued. It resulted in Chambers being thrown from the roof to his death.

At the state court trial, Thompson, who took the stand in his own defense, testified that as he, Johnson, Ford and Chambers reached the landing between the fourth and fifth floors of the apartment building on their way to the roof, Johnson turned and went downstairs. Thompson also testified that it was Ford alone who had assaulted Chambers on

---

2. While his direct appeal was pending before the Appellate Division, Johnson in November 1970 filed in the trial court his first motion to vacate his judgment of conviction on the ground of newly discovered evidence. Justice Tierney denied the motion on November 10, 1971. An appeal from this order was heard along with Johnson's direct appeal. The order was affirmed without opinion. 38 App.Div.2d 692, 327 N.Y.S.2d 546 (1st Dept. 1971) (mem.). Leave to appeal to the New York Court of Appeals was denied on January 25, 1972.

3. Johnson was represented on appeal by counsel other than his trial counsel.

4. Johnson also alleged that the prosecution intentionally had suppressed exculpatory material in violation of his rights under Brady v. Maryland, 373 U.S. 83 (1963). Justice Fein rejected this claim on its merits.

5. Johnson's *Brady* claim was raised in and rejected by the district court. It is not the subject of the instant appeal.

the roof, resulting in the latter being thrown to his death. Mullins testified that Johnson and Ford returned to her apartment approximately 15 to 20 minutes after they had left it, and that Ford told her that it was he who had thrown Chambers from the roof. Johnson did not testify.

On the basis of this and other evidence, the trial judge instructed the jury that it might find Johnson guilty of murder if it found that he had acted in concert with Ford with the intent of assisting in the commission of the homicide. Johnson's trial counsel took exception to that portion of the charge relating to intent. She claimed that the judge had failed adequately to distinguish between the intent to assault Chambers in Mullins' apartment and the intent to act in concert on the roof for the purpose of murdering Chambers.[6] She requested the judge to charge in accordance with this distinction. This request, which was construed by the district court as a request to charge the lesser included offense of assault, was denied. This alleged error was not raised on direct appeal in the state courts.

## II.

The essential issue on the instant appeal is whether Johnson's appellate representation in the state courts was constitutionally ineffective by reason of the failure of his counsel to raise on appeal the trial judge's asserted refusal to charge the lesser included offense of assault.

■ Despite Johnson's assertion, and what appears to be the district court's clearly erroneous assumption, that Johnson had exhausted available state remedies, our threshold inquiry must be directed to that issue. For absent compliance with the exhaustion requirements of 28 U.S.C. 2254(b) and (c) (1970), it ordinarily is inappropriate for a federal court to entertain a state prisoner's petition for a writ of habeas corpus. Picard v. Connor, 404 U.S. 270, 276 (1971); Nelson v. George, 399 U.S. 224, 229–30 (1970); Ralls v. Manson, 503 F.2d 491, 493 (2 Cir. 1974); United States ex rel. Gibbs v. Zelker, 496 F. 2d 991, 993–94 (2 Cir. 1974); United States ex rel. Nelson v. Zelker, 465 F.2d 1121, 1123–25 (2 Cir.), cert. denied, 409 U.S. 1045 (1972).

6. The following is a portion of the colloquy between Johnson's trial counsel and the court:

"Counsel: Now, I also take exception to the charge of the Court when it referred to the intent and the common enterprise, it did not clearly state to this jury that they could not consider that the intent that resulted in the assault upon the deceased in the apartment or the common enterprise that may have given rise to the assault on the deceased in the apartment is the intent and common enterprise that must be found to convict these defendants of murder . . . and I request the Court to charge the jury clearly that the intent necessary to act in concert to find out where Larry—where Perry Ford's clothing was and the result of the assault on Chambers inside that apartment should be clearly distinguished from an acting in concert for the purpose of murdering . . . Nicholas Chambers.

The Court: In summarizing the evidence, the Court summarized the testimony of all the witnesses and that is the testimony that is the evidence which this jury will deliberate upon and whatever occurred in the apartment prior to the time they left the apartment and started upstairs surely was an assault but all of that is merged in this circumstantial evidence and intent of the whole proceeding from beginning to end and it's not like taking separate blocks and putting them all together and charging the separate blocks. You take all the blocks together as the evidence and charge—in charging the one crime. And I'm not going to charge separate counts here of assault because murder in itself is an assault with—and that's what I have before me.

Counsel: I'm saying that the act that took place in the apartment an act of assault is not the assault that would merge in the homicide—

The Court: I decline to charge. First of all, there is no such charge in the indictment. I find anything that occurred prior to what you are talking about is not independent, it's merged in and part of the evidence to spell out intent, circumstantial evidence and the whole ball of wax leading up to acting in concert to commit a crime."

Johnson argues that the state's failure to raise the issue of exhaustion in the district court constituted a waiver and bars our consideration of it on appeal.

■ The requirements of § 2254(b) and (c) are not jurisdictional. Darr v. Burford, 339 U.S. 200, 204–11 (1950); United States ex rel. Curtis v. Warden, 463 F.2d 84, 86 (2 Cir. 1972). They reflect a policy of federal-state comity. Fay v. Noia, 372 U.S. 391, 419–20 (1963). While it is within our discretion in a habeas corpus proceeding to decline to consider issues not raised below, United States ex rel. Springle v. Follette, 435 F.2d 1380, 1384 (2 Cir. 1970), cert. denied, 401 U.S. 980 (1971); United States ex rel. Ross v. LaVallee, 341 F.2d 823, 824 n. 1 (2 Cir.), cert. denied, 382 U.S. 867 (1965), here we find it particularly appropriate to consider the exhaustion issue, as we did under similar circumstances in United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707, 710 (2 Cir. 1960):

> " . . . in view of the important role the exhaustion doctrine has assumed in the maintenance of a proper balance of authority between the national and state governments in our federal system, . . . we think it is appropriate that we consider the exhaustion question, although it has not been presented to us by the parties."

Cf. United States ex rel. Springle v. Follette, *supra*, 435 F.2d at 1384.

Indeed, the policy referred to in *Wissenfeld* is even more compelling here where resolution of Johnson's constitutional claim requires us at the outset to consider and decide several troublesome questions of New York criminal procedure: First, whether the colloquy between the court and Johnson's trial counsel constituted an effective request to charge a lesser included offense under state law; and second, assuming an effective request was made, whether the court erred in refusing to so charge. Such a charge would be appropriate under New York law only if it were impossible for Johnson to have committed the murder on the roof without concomitantly committing *"by the same conduct"* the assault in Mullins' apartment. N.Y.Crim.Proc.Law § 1.20(37) (McKinney 1971) (emphasis added). These are questions which in our view properly should be considered in the first instance by the New York courts.[7]

The only point in the state proceedings where Johnson raised the claim of ineffective assistance of counsel was in his second motion to vacate the judgment of conviction, pursuant to N.Y. Crim.Proc.Law § 440.10 (McKinney 1971). This provision, however, permits collateral attack on a conviction only on the basis of errors committed *at trial*, as reflected in Justice Fein's decision denying Johnson's motion:

> "If appellate counsel's alleged oversight is intended as a claim of inadequate representation, such conduct occurred at the appellate level and not during the course of the proceedings in the nisi prius court. It does not appear that the trial court erred."

7. While we do not reach the merits of Johnson's constitutional claim in view of our holding that he has failed to exhaust state remedies, we note in passing that we would have difficulty, on the record before us, in upholding the determination of the district court that the failure of Johnson's appellate counsel to raise a questionable point of New York law rendered his performance so "'horribly inept' as to amount to a 'breach of his legal duty faithfully to represent his client's interests' . . . . " United States ex rel. Scott v. Mancusi, 429 F.2d 104, 109

(2 Cir. 1970), cert. denied, 402 U.S. 909 (1971), quoting from United States ex rel. Maselli v. Reincke, 383 F.2d 129, 132 (2 Cir. 1967), or that appellate counsel's alleged oversight was such "as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." United States v. Wight, 176 F.2d 376, 379 (2 Cir. 1949), cert. denied, 338 U.S. 950 (1950).

These are the standards by which we determine whether assistance of counsel has been constitutionally ineffective.

While it may be said that Johnson resorted to the wrong state remedy, we held in United States ex rel. Cuomo v. Fay, 257 F.2d 438, 442 (2 Cir. 1958), cert. denied, 358 U.S. 935 (1959), that:

> "Invocation of an improper remedy will suffice as an exhaustion only on a *clear indication* that the federal question was considered on the merits." (emphasis added).

Here, Justice Fein specifically declined to rule on the merits of Johnson's claim of ineffective assistance of counsel. Nor can it be said that Johnson's motion for leave to appeal to the Appellate Division from Justice Fein's order afforded that court "an initial 'opportunity to pass upon and correct' alleged violations of its prisoner['s] federal rights." Wilwording v. Swenson, 404 U.S. 249, 250 (1971), quoting from Fay v. Noia, *supra*, 372 U.S. at 438.

 We hold that the constitutional issue which Johnson seeks to raise in his federal habeas corpus petition was not "fairly presented to the state courts" as required by Picard v. Connor, *supra*, 404 U.S. at 275–76, and other authorities cited above at page 1311.

We reverse the order of the district court and dismiss the petition on the ground that petitioner has not exhausted state remedies.

LUMBARD, Circuit Judge (concurring, with whom Judge HAYS also concurs):

I concur.

While I agree completely with the result reached in the main opinion, I think it appropriate to express my views on the merits of this case.

The district judge was clearly erroneous in finding that Johnson's trial counsel requested a charge on a lesser included offense. As is apparent from the colloquy between the trial court and defense counsel (opinion at p. 1311, n. 6) the deliberate strategy of Johnson's trial counsel was to separate the events that occurred on the roof from those in the apartment by stressing that Johnson was not present when the murder occurred and that the prior events in the apartment were unrelated. If this could be done, Johnson would be home free on the murder charge. This attempt to have Johnson completely exonerated would have been seriously jeopardized if the jury was given the additional choice of finding Johnson guilty of assault. As such the failure of Johnson's appellate counsel to raise the refusal to charge a lesser included offense on appeal does not in any way "shock the conscience" of the reviewing court. United States v. Wight, 176 F.2d 376, 379 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).