**Edith May CAMERON, et al., Petitioners-Appellants,**

v.

**Charles FASTOFF, Director, New York City Department of Probation, et al., Respondents-Appellees.**

**No. 176, Docket 75–2073.**

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1975.

Decided April 22, 1976.

Lines' option, Bill of Lading specifically claused provides under deck stowage will NOT be issued."

Lawrence Stern, Brooklyn, N. Y. (Diller & Schmukler, New York City), for petitioners-appellants.

Lillian Z. Cohen, Asst. Atty. Gen. of the State of N. Y., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondents-appellees.

Before MANSFIELD, TIMBERS, and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from orders entered March 20 and 31, 1975 in the Eastern District of New York, Walter Bruchhausen, *District Judge*, and a judgment entered March 21, 1975, dismissing a petition by state prisoners for writs of habeas corpus, we find that the determinative threshold question, except for one claim of error, is whether petitioners have exhausted state remedies as required by 28 U.S.C. § 2254(b) and (c)

(1970). We hold that they have not and therefore affirm the dismissal of the petition on that ground; but, with respect to the one claim of error as to which there has been exhaustion of state remedies, we affirm the dismissal on the merits.

## I.

On February 17, 1972, each of the six petitioners pleaded guilty to various degrees of criminal possession of a dangerous drug (heroin), N.Y. Penal Law §§ 220.05, 220.10, 220.15 (McKinney 1967), before Justice William C. Brennan in the Queens County Supreme Court. On May 15, 1972, they were sentenced by Justice Brennan to terms ranging from three years probation to fifteen years imprisonment; two were fined.[1]

Notwithstanding the fact that the judgments of conviction were entered upon pleas of guilty, petitioners appealed, pursuant to N.Y. Criminal Procedure Law § 710.-70 (McKinney 1971), from two orders which had been entered prior to their guilty pleas denying their motions to suppress evidence, which we discuss more fully below. The Appellate Division on December 29, 1972 filed an opinion affirming the determination of the trial court that there was probable cause for issuance of the search warrants based on the police officer's affidavit, but remanded for a hearing on whether the affidavit contained perjurious statements.

*People v. Cameron*, 40 App.Div.2d 1034, 339 N.Y.S.2d 12 (2nd Dept. 1972).

Following a hearing pursuant to the remand, Justice Brennan on August 14, 1973 filed an opinion again denying the motions to suppress, this time on the ground that petitioners had failed to sustain their burden of proving that the affidavit in question was perjurious. The Appellate Division on May 6, 1974 filed an opinion affirming the three orders which had denied motions to suppress, including Justice Brennan's latest order, and affirmed the convictions of the six petitioners. *People v. Cameron*, 44 App.Div.2d 355, 355 N.Y.S.2d 19 (2nd Dept. 1974). The New York Court of Appeals denied leave to appeal on May 29, 1974.

The United States Supreme Court on December 9, 1974 denied certiorari. *Cameron v. New York*, 419 U.S. 1049 (1974). The petition for certiorari raised for the first time federal constitutional claims of denial of procedural due process, effective assistance of counsel, compulsory process and confrontation of witnesses; it also asserted the claim that previously had been raised of lack of probable cause for issuance of the search warrants.

The instant petition for writs of habeas corpus was filed in the Eastern District of New York on February 5, 1975, from the denial of which by Judge Bruchhausen in

---

1. The degrees of criminal possession of a dangerous drug to which petitioners pleaded guilty, the sentences imposed and the places of incarceration are as follows:

| Petitioner | Degree of Guilty Plea | Sentence | Place of Incarceration |
|---|---|---|---|
| Williams | second | 15 years imprisonment | Rikers Island |
| Cameron (Marvin) | second | 15 years imprisonment | Attica |
| Sims (Stanley) | third | 15 years imprisonment | Attica |
| Davis | third | 12 years imprisonment | Dannemora |
| Sims (Jennie) | sixth | 3 years probation; $1,000 fine | |
| Cameron (Edith) | sixth | 3 years probation; $1,000 fine | |

The guilty pleas were in satisfaction of greater charges for which each petitioner had been indicted.

two written opinions,[2] and a judgment dismissing the petition, the instant appeal has been taken. The habeas petition presented to the district court the same Fourth, Fifth and Sixth Amendment claims which petitioners had raised for the first time in their certiorari petition. Judge Bruchhausen dismissed the habeas petition on the merits.

We affirm the dismissal on the merits of the one claim as to which there has been exhaustion of state remedies; as to the others, we affirm the dismissal for failure to exhaust state remedies.

## II.

Although we do not reach the merits of petitioners' claims with the exception of the claim discussed in Section III, *infra*, we believe that the following recital of petitioners' claims upon which their suppression motions were based is necessary to an understanding of our holding that petitioners have not exhausted state remedies.

Patrolman Lucido Bonino[3] was a plainclothesman assigned to gambling investigations. On May 18, 1971, he and a fellow police officer saw Stanley Sims leave his residence in St. Albans, Queens, at 11:10 A.M., join a male negro and drive with the latter to the residence of Marvin and Edith Cameron in Jamaica, Queens. Bonino knew Sims was "involved in illegal policy operations." Records of the New York City Police Department listed Sims as having been arrested 15 times for "Policy Violations, most of which are for Controller of Policy Operations." On the day in question Sims and his companion entered the Cameron residence. Bonino kept the place under observation for five hours. He saw a number of male negroes enter and remain inside. At about 4:30 P.M., Bonino saw Sims leave the Cameron residence with the male negro

who had accompanied him there. Sims was carrying a large paper bag. He and the negro returned to and entered Sims' residence in St. Albans. Sims was still carrying the paper bag. Bonino kept the Sims residence under surveillance for the next half hour. During this time he saw numerous male negroes each knock on the front door, speak briefly with Sims, hand him a brown envelope and then depart. The brown envelopes were the kind used by policy collectors. During periods of five or six hours on each of the next two days, Bonino kept Sims, his residence and the Cameron residence under observation. Each day he saw Sims and the same male negro drive to the Cameron residence, enter, leave and return to the Sims residence. Each day Bonino observed that transactions corresponding to those which had taken place the first day were repeated "to the letter."

Based on these observations Bonino concluded that Sims and his male negro companion were accepting policy wagers at the Sims and Cameron residences. Upon his affidavit he applied for and obtained warrants authorizing him to search for gambling paraphernalia at the Sims and Cameron residences as well as in the car used by Sims and his companion to drive back and forth.

Execution of the search warrants resulted in the seizure at the Sims residence of gambling records, two revolvers, more than $40,000 in cash and $15,000 in diamonds and other jewelry; at the Cameron residence, 20 pounds of pure heroin, a large quantity of policy slips and two loaded revolvers. A subsequent search of Sims' safe deposit box resulted in the seizure of approximately $70,000 additional cash and some U.S. savings bonds.

**2.** Judge Bruchhausen held in his first opinion of March 20, 1975 that petitioners' guilty pleas had waived all ' non-jurisdictional defects. Upon petitioners' motion for reargument which urged the court to reach the merits of their claims, citing *Lefkowitz v. Newsome*, 420 U.S. 283 (1975), the court filed a second opinion on March 31, 1975 dismissing the petition on the ground that the Appellate Division's opinion of

May 6, 1974 affirming petitioners' convictions "completely refutes their claim of lack of due process and fair hearing."

**3.** The facts in this paragraph in substance are those set forth in Bonino's affidavit of May 21, 1971 on the basis of which the search warrants were issued on that date by Judge Tsoucalas of the New York City Criminal Court.

Petitioners moved in the Queens County Supreme Court to suppress the seized evidence on the ground that the warrants were issued without probable cause. Justice Albert H. Bosch set the motion for hearing. But petitioners waived a hearing and relied solely on the alleged legal insufficiency of Bonino's affidavit. The motion came on for hearing before Justice Frank O'Connor. After hearing oral argument he filed an opinion on November 30, 1971 and entered the first of the several orders denying petitioners' motions to suppress.

On January 12, 1972, petitioners renewed their motion to controvert the affidavit in support of the search warrants and to suppress the evidence. In support of the renewed motion, petitioners' counsel alleged that, as a result of testimony before the Knapp Commission, a federal grand jury had been convened "to examine questions specifically related to the conduct of the arresting officers in this case". Petitioners' counsel further alleged, on information and belief, that the officers had invoked the Fifth Amendment and had refused to testify before the grand jury. He also alleged that the affidavit upon which the search warrants were issued contained perjured testimony.

In opposition to the motion, the Queens County District Attorney alleged that Assistant United States Attorney Edward M. Shaw of the Southern District of New York had told him that, although two police officers connected with this case had been called before the federal grand jury, "the testimony sought from them had nothing whatsoever to do with their conduct in the case before this Court."

On January 26, 1972, Justice Brennan filed an opinion and entered the second order denying petitioners' motion to suppress.

After petitioners pleaded guilty and were sentenced, their first appeal to the Appellate Division, as stated above, resulted in that court's decision of December 29, 1972 affirming Justice O'Connor's order that there was probable cause for issuance of the search warrants based on Bonino's affidavit but, with respect to Justice Brennan's order, remanding for a hearing as to whether the affidavit contained perjurious statements.

The hearing pursuant to the remand was held before Justice Brennan in June 1973—two years after the search warrants had been issued and executed. The four witnesses who testified, including two of the petitioners, were all called by petitioners' counsel. The critical witness of course was Bonino. There was an exhaustive inquiry, extending over a period of three days, regarding the surveillance which preceded the issuance of the search warrants, the basis for the statements in the affidavit on which the warrants were issued, and the evidence seized pursuant to the warrants. Bonino testified at the hearing before Justice Brennan that he had testified before a federal grand jury as well as a Queens County grand jury. He said that his testimony before the federal grand jury was "not directly" related to petitioners' case. In response to a question by petitioners' counsel, Bonino stated, "I was not questioned on [the truthfulness of the search warrant affidavit]. And if I was, I would have again invoked my constitutional privileges." Bonino was not asked directly about the truthfulness of his affidavit, although Justice Brennan indicated to petitioners' counsel that this line of inquiry was relevant and ought to be pursued. Petitioners' counsel did question Bonino at length about his surveillance of the Sims and Cameron residences. With respect to these questions he testified freely, never invoking the Fifth Amendment. It was only with respect to questions about his disposition of the evidence after it was seized that he refused to answer. Petitioners did not call to the stand either of the other two officers who had participated with Bonino in the surveillance, the search and seizure, and the arrests. Petitioners contended, in a memorandum submitted after the hearing, that Bonino's invocation of his Fifth Amendment privilege denied them a fair inquiry into the truthfulness of the affidavit on which the search warrants were issued.

On August 14, 1973, Justice Brennan filed a fourteen page opinion and entered the third order denying petitioners' motion to suppress. In holding that petitioners had not sustained their burden of proving that the Bonino affidavit was perjurious, the judge was careful to point out that Bonino had invoked his privilege against self-incrimination *only with respect to the execution of the warrants and the disposition of the property seized* —none of which impugned the contents of the affidavit on which the warrants were issued.

From this order petitioners took their second appeal to the Appellate Division which on May 6, 1974 affirmed the three orders denying petitioners' motions to suppress and affirmed their convictions. The court stressed, as Justice Brennan had in his opinion below, that Bonino's refusals to answer questions on constitutional grounds were *"with regard to the execution of the warrant or his disposition of the items seized"* and that *"none of them dealt with the truthfulness of the affidavit upon which the warrant was obtained."* (emphasis that of the Appellate Division).

There followed denial of leave to appeal to the New York Court of Appeals; denial of certiorari by the United States Supreme Court; and dismissal of the petition for habeas corpus by the district court below, from which the instant appeal is now before us.

### III.

We turn directly to the one claim of error as to which state remedies have been exhausted.

Appellants contend that the district court erred in holding that the affidavit of police officer Bonino was sufficient to establish probable cause for issuance of the search warrants. We disagree.

■ The facts set forth in Bonino's affidavit which we have summarized above— including his detailed statement of the results of three days of surveillance, his expertise in policy operations and his knowledge of Sims' police record of 15 arrests—

surely were sufficient to establish the requisite probable cause for issuance of the search warrants. *United States v. Harris*, 403 U.S. 573, 579 (1971); *United States v. Ventresca*, 380 U.S. 102, 109 (1965); *Aguilar v. Texas*, 378 U.S. 108, 109 (1964).

This claim of the insufficiency of the Bonino affidavit to establish probable cause was raised and rejected at every appropriate stage of the proceedings in the state courts. Petitioners have exhausted their state remedies with respect to it.

■ We hold that this is a proper case in which to rule on the merits of the one claim that has been exhausted, while declining to rule on the merits of those claims that have not been exhausted. *United States ex rel. Annunziato v. Deegan*, 440 F.2d 304, 305–06 n. 1 (2 Cir. 1971); *United States ex rel. Gentile v. Mancusi*, 426 F.2d 238, 240 (2 Cir. 1970); *United States ex rel. Levy v. McMann*, 394 F.2d 402, 404–05 (2 Cir. 1968).

■ Since the record of the state court proceedings adequately demonstrates that the Bonino affidavit was sufficient to establish probable cause for the search warrants, we agree with the district court that there was no need to hold a further hearing on the matter. 28 U.S.C. § 2254(d) (1970).

On this issue we affirm the district court's dismissal of the petition on the merits.

### IV.

This brings us to petitioners' federal constitutional claims under the Fourth, Fifth and Sixth Amendments as to which we hold they have not exhausted state remedies as required by 28 U.S.C. § 2254(b) and (c) (1970).

The central fact which petitioners claim deprived them of their federal constitutional rights was Bonino's refusal to testify regarding the execution of the search warrants and the disposition of the evidence seized. Based on his invocation of his Fifth Amendment privilege as to these matters, petitioners assert that they were denied their federal constitutional rights to procedural due process, effective assistance of

counsel, compulsory process, confrontation of witnesses and other related rights. Petitioners, however, raised these constitutional claims for the first time in their petition for certiorari which was denied by the Supreme Court on December 9, 1974. Thereafter they presented substantially the same constitutional claims to the district court in their habeas petition filed on February 5, 1975.

■ Our careful examination of the state court record, including petitioners' briefs in the Appellate Division, has satisfied us that petitioners never have presented to the New York state courts the federal constitutional claims which they now seek to have adjudicated in the federal courts. The most that can be said with respect to petitioners' contentions in the state courts in this regard is that they urged that Bonino's invocation of the Fifth Amendment violated their rights *under state law*. But that is not sufficient to satisfy the exhaustion requirement of Section 2254(b) and (c). *United States ex rel. Gibbs v. Zelker*, 496 F.2d 991, 993–94 (2 Cir. 1974).[4]

■ We hold that, since petitioners have never fairly presented to the state courts the federal constitutional claims now urged upon us and the district court below, *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Nelson v. George*, 399 U.S. 224, 229–30 (1970); *United States ex rel. Johnson v. Vincent*, 507 F.2d 1309, 1311–13 (2 Cir. 1974), cert. denied, 420 U.S. 994 (1975); *United States ex rel. Gibbs v. Zelker, supra; United States ex rel. Nelson v. Zelker*, 465 F.2d 1121, 1123–25 (2 Cir.), *cert. denied*, 409 U.S. 1045 (1972), they have failed to exhaust state remedies with respect to these claims as required by 28 U.S.C. § 2254(b) and (c).

■ Finally, there remains for consideration petitioners' contention that, even if they did not present their federal constitutional claims to the state courts, we nevertheless should rule on the merits of such claims because petitioners are precluded from obtaining further relief in the state courts in view of N.Y. Criminal Procedure Law § 440.10(2)(c) (McKinney 1971).[5]

As appears from the relevant portions of this statute set forth in the margin, § 440.-10(1)(h) provides for post-conviction relief, *at any time* after the judgment was entered, upon the filing of a motion in the trial court on the ground that the judgment "was obtained in violation of a right of the defendant under the constitution of this

---

**4.** In *Gibbs*, where we held that the petitioner had failed to raise in the New York state courts the same federal constitutional claims which he was urging upon the federal courts—"either denominated as such or spelled out in substance," 496 F.2d at 993—we stated with respect to petitioner's brief in the New York Court of Appeals:

"Gibbs' brief in the New York Court of Appeals—a most puzzling document—is likewise inadequate to exhaust state remedies on the issues here sought to be raised. We are told that this brief is supposed to have presented both the Fourth and Fifth Amendment issues to New York's highest court. True, it does talk about the signature of the detention order by an acting police justice who is said to have lacked authority to confine a material witness under New York law. The brief also makes some mention of lack of counsel and warnings—*but all in the context of the requirements of New York law. The Court of Appeals could well have read the entire document and never have realized that a Fifth or Sixth Amendment claim was being made*." 496 F.2d at 994 (emphasis added).

**5.** N.Y. Criminal Procedure Law § 440.10 (McKinney 1971) in relevant part provides:

"1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that:

\* \* \*

(h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States.

2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

\* \* \*

(c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him. . . . ."

state or of the United States." We have had occasion, in affirming the dismissal of a state prisoner's habeas petition for failure to exhaust state remedies, to note, specifically referring to this provision of the statute, that "New York provides an adequate post-conviction procedure to adjudicate previously unconsidered constitutional claims." *United States ex rel. Gibbs v. Zelker, supra*, 496 F.2d at 994 n. 6.

Petitioners however contend that § 440.-10(1)(h) is of no avail to them because of the limitation which is imposed by § 440.-10(2)(c) in foreclosing such relief when there has been an "unjustifiable failure" to raise on direct appeal the claimed violation of a constitutional right and "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from the judgment, adequate review of the ground or issue raised upon the [post-conviction motion to vacate judgment]. . . ." In short, petitioners invite us to construe § 440.10(2)(c), on the facts here presented, to mean that, since they have not "fairly presented" their federal constitutional claims to the state courts, there has been an "unjustifiable failure" to do so and therefore they have exhausted state remedies. We decline the invitation.

We are loathe to hold what the New York Court of Appeals has not said, namely, that § 440.10(2)(c) was intended by the New York Legislature to foreclose raising, under the circumstances here presented, claimed violations of the United States Constitution in a post-conviction proceeding. Nor are we prepared to hold that state habeas corpus relief is not available in situations where § 440.10(2)(c) is held inapplicable.[6] Since the exhaustion doctrine of 28 U.S.C. § 2254(b) and (c) reflects a deeply rooted policy of maintaining a proper balance of authority between the national and state governments in our federal system, *United States ex rel. Johnson v. Vincent, supra*, 507 F.2d at 1312; *United States ex rel. Wissenfeld v. Wilkins*, 281 F.2d 707, 710 (2 Cir. 1960), we believe that these important questions of New York law should be decided by the New York courts.[7]

We affirm the dismissal of the habeas petition with respect to the federal constitutional claims presented for failure to exhaust state remedies; and we affirm the dismissal of the petition on the merits with respect to the claim that the search warrants were issued without probable cause.

Affirmed.

---

**6.** At least one New York decision appears to treat state habeas corpus as a separate remedy. *People ex rel. Anderson v. Warden*, 68 Misc.2d 463, 466, 325 N.Y.S.2d 829, 835 (Sup.Ct., Bronx Co., 1971).

And we note that the New York State Constitution, Art. One, § 4, provides that the writ of habeas corpus shall not be suspended.

**7.** There have been peripheral references to certain provisions of N.Y. Criminal Procedure Law § 440 by several panels of our Court. See, e.g., *United States ex rel. Johnson v. Vincent, supra*, 507 F.2d at 1312–13 (§ 440.10 permits collateral attack on a conviction only on the basis of errors committed *at trial* ); *United States ex rel. Gibbs v. Zelker, supra*, 496 F.2d at 994, n. 6 (§ 440.10(1)(h) provides adequate postconviction procedure to adjudicate previously unconsidered constitutional claims); *United States ex rel. Leeson v. Damon*, 496 F.2d 718, 720–21 (2 Cir. 1974) (despite dictum regarding § 440.-

10(2)(c), holding was that the constitutional issue presented in the habeas petition in the district court *had* been raised in the state trial court, in the Appellate Division and in the New York Court of Appeals).

Recently in *Kelleher v. Henderson*, 531 F.2d 78, 80–81 (2 Cir. 1976), a panel of our Court held that the district court had not abused its discretion in reaching the merits of a constitutional claim even though it had not been raised in the state courts. There the Court emphasized its doubt as to whether § 440.10(2)(c) foreclosed relief in the state courts. *Id.* at 80, n. 4. Moreover, although it reached the merits, the Court denied petitioner's claim for relief. Under the circumstances of the instant case and for the reasons stated above, we hold that it is appropriate here to seek clarification from the state courts rather than to consider the merits of the instant claims which the state courts themselves might be willing to consider.